# Rice *versus* Commonwealth.

1. In order to warrant a conviction for seduction under a promise of marriage, in accordance with the provisions of the act of March 31st 1860, § 41, Pamph. L. 394, there must be evidence to corroborate the prosecutrix, in regard to the promise of marriage.

2. The fact that a defendant charged with seduction is now allowed to testify in his own behalf, does not alter the law, in regard to the necessity of evidence corroborative of that of the prosecutrix, as to the promise of marriage.

3. What circumstances do, and what do not, constitute sufficient corroborative evidence to warrant a conviction in such case, considered.

4. Where in such case there is some proof that the defendant admitted the promise to marry, it is not error for the court to refuse to withdraw the question of seduction from the jury.

5. Where the court, in its charge to the jury, states the same proposition of law twice, the first time correctly, the second time incorrectly, it will be inferred that the latter statement is likely to have made a lodgment with the jury, and, in some instances, the judgment will be reversed on this ground.

[Rice *v.* Commonwealth.]

February 22d 1882.   Before SHARSWOOD, C. J., GORDON, PAXSON, STERRETT and GREEN, JJ.  MERCUR and TRUNKEY, JJ., absent.

ERROR to the Quarter Sessions of *Lackawanna county:* Of January Term 1882, No. 31.

Indictment against Frederick Rice, for the seduction under an alleged promise of marriage of Margaret Robertson, under twenty-one years of age.

On the trial, before HANDLEY, J., Margaret Robertson testified, on behalf of the Commonwealth, that she was twenty years of age, and had always resided with her parents in the village of Dunmore; that she became acquainted with the defendant in 1878, and that for more than a year thereafter he "kept company" with her, generally meeting her at church on Sunday evenings, and walking home, and remaining with her afterwards until after 10 o'clock.   That on three occasions the defendant went into the house, and saw Mrs. Robertson, but they generally remained outside near the gate.   That in September 1880, defendant invited her to take a walk, about 9 o'clock in the evening, which they did, and that during their absence they had sexual intercourse, and that this was repeated about four weeks later.   She gave birth to a child May 28th 1881.

Her testimony in relation to the alleged promise of marriage prior to the seduction was, that on both the occasions referred to the defendant "went down upon his knees, and promised to marry her if she would let him do — what he did do," and that she would not have permitted it otherwise.  This testimony was not corroborated.  There was, however, some testimony that the defendant afterwards said to Mrs. Robertson—Margaret's mother—he was sorry for what he had done; that he couldn't marry her before two weeks; "he promised to be there and set the day, and didn't come."  Defendant denied such promise.

There was no evidence indicative of an intention of marriage on the part of the defendant, other than the fact that he would meet her once or twice a week and walk with her, &c., with her parent's knowledge, and without their objection.

The defendant testified: Q. Tell what the reputation of this girl is there, in Dunmore, from the speech of the people? A. I heard said, she was kind of a loose character; she went by the name of the "regular" in Dunmore.  I don't believe I went with her over two or three times before I heard rumors.

The father of Miss Robertson (the prosecutor), on cross-examination, was asked: Q. Don't you know, that your daughter goes by the name of the "regular" in Dunmore? A. No, sir, I never did.  Yes, sir, I have have heard talk, but have no certainty of it, and these are the characters, that got it up.

[Rice *v.* Commonwealth.]

At the close of the Commonwealth's case defendant's counsel moved the court to take from the jury the question of seduction, and submit to them no other question but that of fornication and bastary.  Motion overruled; exception.

The court charged the jury, inter alia :

" The prosecutor alleges that there was a promise of marriage made to his daughter before this illicit connection took place . . . .  The defendant says that he never made a promise of marriage to this young lady, but admits that he did have illicit connection with her.  This evidence of course contradicts the testimony of the daughter of the prosecutor.  Now the decisions say, before there can be a conviction in a case of this nature, there must be other corroborating evidence sustaining the promise of marriage, and that corroborative evidence may be made out by positive proof or by circumstantial evidence.  This is one of the essential requisites to be found by you from the evidence in this case, before there can be a conviction. . . . . That, therefore, leaves but two questions for you to ascertain as the case is now presented to you : first, was she a young lady of good repute ; second, did the illicit connection take place because of the promise of marriage ?

" It is contended that this case requires the essentials so far as the making of presents, writing of love-letters and all of such things that pass between young people, to make out this case. But we have long passed that day, so far as courtship is concerned.  There is no doubt but that in the early history of these cases, when the defendant was not permitted to go upon the witness stand and not allowed to testify, that there should be corroborative evidence to sustain the charge made by the young lady of the promise of marriage ; but in our day and generation, when a defendant may go upon the witness stand and testify equally as well as the prosecutor, then of course these essentials are not absolutely necessary, although they may yet appear in the case.  The proper way to dispose of cases of this kind is to take each case as it stands on its own four legs, take the case as the parties built it up, keeping in mind their standing in society and their immediate manner of courtship.

" One man may desire to court the girl he desires to make his wife in a secluded place, or he may desire to keep it quiet ; another may be in the habit of keeping company with a young lady and appear upon the public highway from time to time so that all may see him ; hence there is no standard, each case must stand on its own four legs as the parties built it up. ·

" Now in this case it is for you to say whether the meeting of these parties, which continued for over a year, was merely for the purpose of having illicit connection, or whether it was for

an honorable purpose on the part of the defendant—that is, for the purpose of making this young lady his wife.

" Now it is for you to say from all of the evidence and the surrounding circumstances of this case whether the original meeting was honorable, or whether, if he made a promise of marriage, it was made for an honorable purpose, and not for the purpose of deceiving this young lady and gaining her affection so that he might have illicit connection with her."

Verdict, guilty in manner and form, &c. The defendant was sentenced to pay the costs of prosecution and a fine of $500, and to separate and solitary confinement in the Eastern penitentiary for one year and six months.

The defendant, having obtained a special allocatur, took this writ, assigning for error the refusal by the court of his motion to withdraw the question of seduction from the jury, and the portions of the charge above quoted.

*Cornelius Smith*, for the plaintiff in error, cited—Commonwealth *v.* Walton, 2 Brewst. 489.

*J. F. Connolly* (with him *E. W. Simrell*, district attorney, and *H. M. Hannah*), for the defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, March 6th 1882.

The plaintiff in error was convicted in the court below of the offence of seduction. The record having been brought into this court for review, several errors have been assigned to the rulings of the learned judge, the most material of which are the second and third.

It was palpable error to instruct the jury, that evidence to corroborate the prosecutrix in regard to the promise of marriage is no longer necessary. Upon this point the learned judge charged : " There is no doubt but that in the early history of these cases, when the defendant was not permitted to go upon the witness stand, and not allowed to testify, that there should be corroborative evidence to sustain the charge made by the young lady of the promise of marriage. But in our day and generation, when a defendant may go upon the witness stand and testify equally as well as the prosecutor, then of course these essentials are not absolutely necessary, although they may yet appear in the case. The proper way to dispose of cases of this kind is to take each case as it stands on its own four legs, take the case as the parties built it up, keeping in mind their standing in society, and their immediate manner of courtship."

The 41st section of the Act of 31st March 1860, P. L. 392,

[Rice *v.* Commonwealth.]

which defines the offence of seduction, expressly provides, "That the promise of marriage shall not be deemed established, unless the testimony of the female seduced is corroborated by other evidence, either circumstantial or positive."

The fact that a defendant charged with seduction is now allowed to testify on his own behalf does not repeal this provision of the Act of 1860. It is urged, however, that this error was cured by the previous portion of the charge, in which the law upon this subject was correctly ruled. If we take the charge as a whole we find this point ruled both ways. Unfortunately, the erroneous ruling was the last, and therefore likely to have made lodgment with the jury. We cannot say it did no harm, in view of the conviction of the plaintiff in error, and the very feeble corroboration of the prosecutrix upon the question of the promise of marriage.

The learned judge also erred in charging: "It is contended that this case requires the essentials, so far as the making of presents, writing of love-letters and all of such things that pass between young people, to make out this case. But we have long passed that day, so far as courtship is concerned . . . . One man may desire to court the girl he desires to make his wife in a secluded place, or he may desire to keep it quiet; another may be in the habit of keeping company with a young lady and appear upon the public highway from time to time so that all may see him; hence there is no standard, each case must stand on its own four legs as the parties built it up."

This instruction was not calculated to aid the jury in arriving at a correct conclusion. In view of the character of the evidence it was not only inadequate but misleading and erroneous. The attentions from which the jury were permitted to infer a promise of marriage were of an equivocal character. The plaintiff in error had been in the house of the prosecutrix but four times, according to her own statement and that of her mother, and then only for a short time. He met her out in the evenings, sometimes at church, walked home with her, and left her at the gate. This is not the kind of intercourse that usually takes place between persons engaged to be married. It may tend to matrimony, but is quite as likely to lead to something else. Circumstantial evidence of an engagement of marriage is to be found in the proof of such facts as usually accompany that relation. Among them may be mentioned letters, presents, social attentions of various kinds, visiting together in company, preparations for housekeeping, and the like. These and similar circumstances, especially when the attentions are exclusive and continued a long time, may well justify a jury in finding a promise of marriage. But the court below ignored all these

matters, as being no longer essential, or rather, as belonging to a past age, and virtually instructed the jury that attentions paid to a woman "in a secluded place" are quite as satisfactory evidence of such promise.

We cannot assent to this proposition. The circumstances which will warrant a jury in finding an intention to marry must be of those pure acts which mark an honorable purpose, and not attentions which are consistent only with the pursuit of lust.

The instruction complained of in the fourth assignment, while not positive error, was well calculated to mislead the jury in the absence of any adequate instruction upon the law of the case.

The fifth assingment does not appear to be sustained by an exception, and moreover is immaterial.

We cannot say it was error to refuse to withdraw the question of seduction from the jury. There was some proof that plaintiff in error admitted the promise to marry. The mere evidence of his attentions to the young woman was not sufficient to carry the case to the jury.

The judgment is reversed, and it is ordered that the record, with this opinion setting forth the causes of reversal, be remanded to the court below for further proceedings.