## Reiter *v.* Reiter, Appellant.

Argued December 14, 1945. Before BALDRIGE, P. J.,
RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

346

*Abraham Wernick,* with him *Israel Krohn,* for appellant.

*Lewis R. Long,* for appellee.

OPINION BY ARNOLD, J., July 19, 1946:

On October 13, 1941, the husband appellee filed a libel in divorce charging his wife, in the language of the statute, with wilful and malicious desertion beginning July 12, 1931. A jury trial resulted in a verdict for the libellant, upon which a decree of divorce was entered, and the wife-respondent appealed.

The essence of the present case is in the libellant's testimony that about 9:00 P. M. on July 12, 1931, his wife came to his room (in the house where both resided) and yelled: "You get out of the house, and if you don't I'm going to bash your brains in", and "I will holler 'murder' out the window to make people believe you are trying to harm me." The libellant then left and testified that his wife said: ". . . and don't try to come back, because I am going to change the locks on the doors . . ." He further testified that she was very angry, that he did nothing to provoke the outburst, and that he believed at that time that she would do him "bodily harm", and that he left because "I was afraid of my life." He also testified that when he left on July 12 he "never intended to resume habitation" with his wife, that he returned several times within the next nine days and found certain doors locked, but that these subsequent visits were for the purpose of seeing his children (and not his wife), and of reclaiming his clothes (and not the marital relationship).

If the libellant is entitled to a divorce on the ground of desertion it must be upon the events of July 12, 1931,

and the alleged locking out of doors, etc., are but corroborative of the purpose of the respondent.

Appellant and appellee both speak of this as a "constructive desertion" and it is frequently so referred to by the profession. The name is unimportant except as it may lead to loose reasoning, for if by the term "constructive desertion" there is meant an enlargement of the statutory grounds for divorce by judicial construction—it does not exist in Pennsylvania. If it is a description of a particular factual type of the desertion defined by the statute, it may exist, but it is not aided by the terminology.

Because of the lack of appellate court discussion, some analysis must be made of this type of case where the guilty spouse extrudes the innocent spouse from the common habitation. We may pass by the cases where a *defense* to a charge of desertion is made by showing that respondent left by reason of the acts of libellant, as in *McDevitt v. McDevitt*, 148 Pa. Superior Ct. 522, 25 A. 2d 853.

A separation which occurs because the respondent directs or even importunes the libellant to leave, is but a consentable separation. Neither the eagerness of the one, nor the reluctance of the other, nor the acquiescence of both can convert this into a *wilful and malicious* desertion.

"Indignities to the person . . ., as to render his or her condition intolerable and life burdensome" [1] (which must consist of a *course of conduct* evidencing a "plain manifestation of settled hate": *Rose v. Rose*, 124 Pa. Superior Ct. 437, 188 A. 595) entitle the innocent spouse to a divorce on those grounds, but *not* on the ground of desertion.

Cruel and barbarous treatment is a ground for divorce under the statute where it endangers libellant's life or where there is a *reasonable* apprehension thereof:

---

[1] Act of 1929, P. L. 1237, § 10 (f), as amended by the Act of 1943, P. L. 21, § 1, 23 P.S. § 10 (f).

*Sklan v. Sklan,* 110 Pa. Superior Ct. 226, 168 A. 481. A spouse withdrawing because of such treatment of course has a good defense if charged with desertion: *Bates v. Bates,* 153 Pa. Superior Ct. 133, 33 A. 2d 281.

The Divorce Law of 1929 (23 P. S. § 1 et seq.) defines the causes for divorce, and in sub-section (d) of § 10 provides: "(d) [Where the other spouse] shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years."

(1). Where a husband purposely locks out, or bars, his wife from the common habitation, her habitation is no longer his home, but is the street or the place to which she goes, and the husband has deserted *her* and absented himself from *her* habitation which he forced her to obtain by destroying for her the common abode. If wilful and malicious, and without reasonable cause, and persisted in for two years, it is a desertion in the words of the statute.

(2). So, too, where a husband physically ejects his wife from the common home.

(3). So, also, where a husband threatens immediately to inflict bodily harm on his wife unless she leaves, and she departs against her will and because of a justifiable fear of physical injury.

These are rules for guidance and must not be read as an act of assembly or a contract. They are neither invariable, exclusive nor without exception. They are, of course, as applicable to the acts of the wife as they are to those of the husband. They are formulated from such cases as *Howe v. Howe,* 16 Pa. Superior Ct. 193, 198, in which the Court said: "When the wife is obliged by the cruelty or violence of her husband to leave him for safety and to avoid personal injury, her compulsory flight amounts to desertion by him"; *Krebs v. Krebs,* 109 Pa. Superior Ct. 175, 167 A. 249 (distinguishing *Young v. Young,* 82 Pa. Superior Ct. 492) ; and the care-

fully considered opinions of Judge REESE and Judge SHEELEY respectively, in *Barnes v. Barnes,* 21 D. & C. 101; *Pierce v. Pierce,* 36 D. & C. 420.

In the type of desertion now discussed the libellant must be wilfully and maliciously put out by force or justifiable fear of immediate bodily harm, or locked out against the will, and without the consent, of the innocent spouse.

In the instant case there was a jury trial and the courts are bound by the facts found by the verdict, and our examination is confined to errors of law, including whether the verdict is sustained by the evidence: *Elsesser v. Elsesser,* 80 Pa. Superior Ct. 117; *Middleton v. Middleton,* 187 Pa. 612, 41 A. 291. The courts may not make an independent examination as to the believability of the evidence, pro or con. Therefore, if the jury, upon proper instructions, found as a fact that the libellant left because of justifiable fear for his life, the libellant comes within the rules above stated. The real question was whether he left because he had a reasonable apprehension that his life was in danger. The charge of the court was inadequate in this respect. The court charged: "If you are convinced, by the burden of proof . . . that that [the narration of the events of July 12 as recited in this opinion] is the truth, then you would be warranted in answering 'Yes' to the question. [Has the respondent committed wilful and malicious desertion, etc.]" This permitted a verdict for the libellant if the jury found that the threat was made, whether or not the libellant actually feared loss of his life if he did not leave; and it did not require the jury to determine whether libellant's alleged fear was well-founded. If the libellant left because of his wife's order, and not because of fear, his leaving was but a consentable separation entitling him to defend an action of divorce on the ground of desertion, but it did not constitute a desertion by her. The court affirmed libellant's point as follows: "If the jury finds from the evidence that Eva Reiter

*compelled* her husband on July 12, 1931, to leave their joint home, by threatening him, and . . . refused to permit . . . the husband to return to his home; . . . and this was persisted in for a period of two years or upwards . . . then she is guilty of wilful and malicious desertion." (Emphasis supplied). The use of the word "compelled" was unfortunate. It is frequently used as a synonym for "impelled", "caused" or "required", as where one is "compelled to keep his word"; or "a compelling reason", or, as lawyers frequently use it, "compelled to differ with opposing counsel" (or the court). Dissenting judges have stated that they were "compelled to differ with the majority [opinion]."[2] A layman wrote a will: "My wife shall receive the compulsory portion [of my estate]".[3] The point was not a safe instruction without explanation. Even if the word "compelled" was understood by the jury as a physical compulsion, or well-founded fear thereof (which is highly doubtful), the situation is that the court charged both correctly and incorrectly on the same proposition, and it is impossible to determine which instruction was followed by the jury, and reversal must be had: *Rice v. Commonwealth*, 100 Pa. 28, 32.

Respondent-appellant raises the question of res adjudicata in that Dr. Reiter sued his wife for divorce in Philadelphia County,[4] the subpœna being awarded February 25, 1933, alleging that the respondent "did by cruel and barbarous treatment endanger the life of your libellant; and . . . did offer . . . indignities to the person of your libellant . . ." That case, after a bill of particulars filed, was referred to a master, whose report recommended the dismissal of the libel with findings, (a) that Dr. Reiter was not the injured and innocent spouse, (b) that libellant was guilty of indignities and cruelty to his wife, and (c) that respondent was not

---

[2] *Cooke v. Roberts*, 335 Pa. 561, 569, 7 A 2d 357.

[3] *Harris Estate*, 351 Pa. 368, 376, 41 A. 2d 715.

[4] 351 March Term, 1933.

guilty of indignities or cruel and barbarous treatment. In the Philadelphia case the libellant's bill of particulars pleaded, inter alia, the events of July 12, 1931, which Dr. Reiter now states forced him to leave home. The court below rejected the plea.

In the one sense in which the term res adjudicata is used, the plea failed because there was no identity of subject matter, the first cause of action being for cruel and barbarous treatment and for indignities, and the present action being on the ground of desertion: *Commonwealth ex rel. Esenwein v. Esenwein,* 153 Pa. Superior Ct. 69, 33 A. 2d 675; *Viney v. Viney,* 151 Pa. Superior Ct. 86, 29 A. 2d 437; *Kelly v. Kelly,* 51 Pa. Superior Ct. 603. As to this type of res adjudicata the court's ruling was correct.

But there is a second type of res adjudicata. In *Wallace's Estate,* 316 Pa. 148, 153, 174 A. 397, it was said: "Broadly stated, the rule of res judicata is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter before the court." See also *Schlosberg et ux. v. City of New Castle,* 100 Pa. Superior Ct. 139; *Federal Land Bank of Baltimore v. Putnam et al.,* 350 Pa. 533, 39 A. 2d 586; *Nevling v. Commercial Credit Company,* 156 Pa. Superior Ct. 31, 39 A. 2d 266; *Miller et ux. v. Dierken et al.,* 157 Pa. Superior Ct. 69, 41 A. 2d 438. As to the charge of indignities in the Philadelphia County case there was no res adjudicata because that charge could only be sustained by proof of a course of conduct, as to which the events of July 12, 1931 were but a link in the chain, and if the libellant's narration of

those events was believed by the triers of the facts, it still follows that the Philadelphia divorce would have had to be refused if the other links did not withstand the test of believability.

But as to the charge of cruel and barbarous treatment in the Philadelphia case, a different situation obtains. In the Philadelphia case the libellant was bound to litigate every act of cruel and barbarous treatment alleged to have been committed by the respondent upon him prior to the filing of the libel. The libel having been filed April 3, 1933, any act of cruel and barbarous treatment committed July 12, 1931 had to be litigated in that case. Even more so is this true when the libellant's bill of particulars pleaded the events of July 12, 1931. The libellant may not have been required to *allege* every ground of divorce then existing against his wife in the Philadelphia action (*Elsesser v. Elsesser*, 80 Pa. Superior Ct. 117), but he was bound to litigate every existing *act* furnishing a ground of divorce for causes pleaded in that action.

If the libellant is entitled to a divorce on the ground of desertion in the present case, it is because his life was endangered or there was a reasonable apprehension thereof. The endangering of life, or the reasonable apprehension thereof, is an act of cruel and barbarous treatment. As such, the libellant was bound to litigate it in the Philadelphia action.

The court should have admitted the respondent's offer of the record in the Philadelphia divorce action, and should have sustained the plea of res adjudicata, not on the ground of identity of parties, cause of action, etc., but on the other ground, which is in effect an estoppel as between the parties in the first case to relitigate any question cognizable in that case. The offer was properly made of the whole record, even though superfluous petitions, etc., were a part thereof. The court could require the respondent to suggest on the record the parts deemed pertinent to the plea, to wit, the plead-

ings, the bill of particulars, any parts of the evidence, the findings, final judgment, or any other matters. The offer, however, is of the whole record.

The difficulty with libellant's case lies even deeper. We have examined the more than 1100 pages of the testimony taken in the Philadelphia action. There the libellant testified as to the events of July 12, 1931: "I went upstairs . . . when my wife came into the room and she said '. . . that's all you want a home for, to eat and sleep.' I said, 'Listen, girlie, you don't have to talk to me that way and I don't have to take it.' She said, 'Oh, no? What are you going to do?—leave me? You're yellow. You don't dare leave this house.' " The libellant then testified that he packed his bag and left, and his wife said, " '. . . don't you try [to come back here] because I'm going to change all the keys tomorrow.' " Thus, when libellant testified twenty-six months after the events of July 12, 1931, he recited no threats, no fear either that his life was endangered, or of anything else. Thirteen years after the event, and eleven years after his former testimony, libellant added to his Philadelphia testimony a threat of his wife which made him believe that his life was endangered, and his fear thereof. If it is true, as he now testifies, that the threat created a justifiable fear of the endangering of his life, it was an act of cruel and barbarous treatment cognizable in the Philadelphia action, and to be there litigated, and upon which that judgment was res adjudicata as to any future litigation. On the other hand, if the true narration of events was as he testified in Philadelphia, that is to say that there was no threat against his life, and no fear, the Philadelphia judgment is not res adjudicata; but it is likewise true that he left because of her directions, insults and orders, and it was but a consentable separation and not desertion by her.

In the present case the question submitted to the jury was tantamount to a verdict on the pleadings and is not the proper practice: *Waldron v. Waldron,* 55 Pa. 231. If

the case is to be tried again, separate questions should be submitted to the jury for special findings, including: (1) The guilt or innocence of the libellant; (2) whether he left through actual fear; (3) whether he was justified in that fear; and (4) whether the libellant did not welcome the opportunity to leave, i. e., whether or not the separation was consentable. In this last connection the evidence in the two trials shows that prior to July 12, 1931, while the parties occupied the same house, they had not lived as man and wife for years; that there was continuous difficulty between them, with many manifestations of dislike on both sides; that the libellant with energy sought to obtain a divorce in 1933, at Philadelphia, and failed, and later brought the present libel for a desertion initiated (under his version) before the pleadings were completed or the evidence taken in the Philadelphia case.

Lastly, no statute requires the libellant to reply to the respondent's answer, and therefore general denials in a reply so filed are not implied admissions; contra as to expressed admissions.

The judgment of the court below is reversed with a venire.