Opinion by
 

 Rhodes, P. J.,
 

 This is an action in divorce in which the wife filed her libel on April 22,1946,
 
 [1]
 
 charging her husband with cruel and barbarous treatment and indignities to her person. Respondent did not file any answer but a bill of particulars was filed by libellant, and thereafter a master was appointed on April 14, 1947. At the hearing before the master libellant appeared with her counsel and witnesses. The master in his report recommended that a divorce be granted on the ground of indignities to the
 
 *436
 
 person. The respondent filed exceptions to tlie master’s report. The court referred the cause back to tlie master for tbe purpose of taking further testimony, and granted leave to libellant to file and serve an amended libel setting up tbe additional ground of wilful and malicious desertion. Both parties, with their counsel and witnesses, then appeared before tbe master and additional testimony was taken. Tbe master in bis supplemental report again recommended that a divorce on tbe ground of indignities to tbe person be granted to libellant, but concluded that tbe charge of desertion bad not been sustained. Exceptions to tbe supplemental report of tbe master were filed by both parties. Tbe court below sustained respondent’s exceptions and dismissed libellant’s exceptions and entered a decree dismissing tbe libel. Libellant has appealed.
 

 The parties were married on September 20, 1941, and thereafter resided in tbe city of Philadelphia where they bad always lived prior to their marriage, and where they have continued to reside since the separation on February 28, 1944. A daughter who lives with libellant was born of tbe marriage on August 1,1942. Respondent contributes to her support. Tbe parties lived together approximately two and one-half years at 5535 Upland Street in tbe city of Philadelphia. Subsequent to tbe separation tbe libellant went to live with her parents and respondent went to live with bis parents. Respondent was employed as a welder by the Philadelphia Transportation Company. At the time tlie libel was filed libellant was 27 years of age, and respondent 30 years of age.
 

 As tbe question of credibility is involved, tbe master’s judgment upon that vital factor is entitled to tbe fullest consideration, although we are not concluded by bis findings.
 
 Smith v.
 
 Smith, 157 Pa. Superior Ct. 582,
 
 *437
 
 43 A. 2d 371. Having seen and heard the parties and their witnesses, he possesses an advantage not granted to this Court or to the court below. The facts must be determined largely from the testimony of the parties themselves. There was some corroboration of the testimony of the libellant as to the conduct of respondent. Her testimony, as incorporated in the record, however, was not free from some inconsistencies which we have not overlooked.
 

 We are not able to agree with the conclusion of the court below in dismissing the libel. Having examined the evidence de novo for the purpose of determining whether the allegations in the libel have been sustained, we conclude that libellant is entitled to a divorce on the ground of indignities. Consequently, it is not necessary for us to determine whether libellant has made out a case on the other grounds charged in the libel and the amended libel. See
 
 Heimovitz v. Heimovitz,
 
 161 Pa. Superior Ct. 522, 523, 55 A. 2d 575.
 

 Libellant, at the time of the marriage, weighed 118 pounds, and after two and one-half years of married life with respondent she weighed 100 pounds. Respondent, with outdoor employment, was a strong and healthy man. Libellant, during a portion of the time they lived together as well as for a period after the separation, as a result of respondent’s actions, was physically unfit to work and was under a doctor’s care. During the first months of their married life, almost daily, as he himself stated, he “blew his top” upon coming home from work in the afternoon and finding that the furnace fire was out. Libellant had difficulty in this respect due to the large size of coal used. Because of this situation he accused her of being lazy, and said he was “God Damn good sick and tired of it.” He admitted before the master that he was wrong in this treatment of libellant, and that her inability to maintain a fire in the furnace was at
 
 *438
 
 tributable to the coal during the first year; she took care of the furnace to his satisfaction the second year. Libellant became ill as a result of her pregnancy in November, 1941, and in January, 1942, she was required by her doctor to go to a hospital. During this period respondent was intolerant of her condition and resentful that she wanted assistance. While libellant was in that condition respondent stayed out nights, drank, and called libellant vile names. He admitted that he drank and at times became intoxicated. When questioned by libellant relative to his late hours he would swear at her and tell her his conduct in that respect was none of her “damn business.” This course of conduct continued until their daughter was born on August 1, 1942. Prior to Christmas, 1942, respondent had been drinking heavily and stayed out until three or four o’clock in the morning. After an all-night absence, when libellant later in the day asked him if he wanted his supper, he struck her in the stomach and told her “You can get the hell out and stay out.” As libellant was afraid to stay in the house, she took the baby and went to her parents’ home. That same evening he gave her her clothes and said “There’s your clothes, and you can get the hell out and stay out.” She said her father was with her at the time. Upon respondent’s promise to do better libellant returned. But there was no material improvement in respondent’s conduct; he again stayed out nights, drank to excess, and told libellant about the women that he had met and about his ability to have any one that he wanted. This continued until September, 1943, when libellant was obliged to leave him again. It was characteristic of respondent when told about his conduct to tell libellant that if she did not like what he said or did she could get out. After the separation in September, 1943, upon his solicitation libellant returned with the hope that their married life might continue notwith
 
 *439
 
 standing the conduct to which she had been subjected. An incident in January, 1944, is indicative of his disposition and attitude toward libellant. While the baby was very ill and while waiting for the doctor he dressed and arranged to go out. Upon her request that he remain to see what was wrong with the child he swore at her and left. However, he came back finally and was there when the doctor arrived later in the evening. In the latter part of February, 1944, he again told libellant that she could get out, and asked her to give the key to the house to him. He remained away some nights, and for several days when at home he refused to speak to libellant or discuss the situation. He repeated his usual assertion “you can get the hell out, you do not live here any more.” On the night of February 28, 1944, he went upstairs, took the baby, who was then 19 months of age, out of bed, brought her down and placed her in the lap of libellant saying “there, you can take her, I never want to see her again.” Respondent pushed libellant out the door. With the child in its night clothes libellant took it to her parents. In addition, respondent took libellant’s clothes and placed them on the porch of her parent’s house, and again told her to stay out of the house, that he did not want to see her again. He changed the locks on the doors so that any key which libellant had could not be used.
 
 [2]
 
 He went to live with his parents, and after two months he disposed of the furniture. The climax to their married life on February 28, 1944, was a clear manifestation of his hate and estrangement, which, together with his previous course of conduct, constitutes such indignities to the person of libellant as
 
 *440
 
 to make her condition intolerable and her life burdensome. Although it does not appear that respondent ever made any bona fide offer to libellant to provide a home and live with her after February 28, 1944, she would be justified in a refusal to return had such an offer been made. Twice before she returned but her efforts to maintain the family relationship were futile. She would not be obliged to again subject herself to the treatment which she had been receiving from him.
 

 We are not impressed with respondent’s denials. On the other hand, the record clearly discloses his characteristics which in no small degree are corroborative of his unjustified course of conduct. On one occasion he says of himself, “I’m the controlling factor.” He testified that he told libellant “I’m damn sure it’s not my business to dry the dishes.” And when libellant was obliged to consult a doctor he insisted that he should go with her “just to see what goes here.”
 

 We have not referred to every incident in the record, but they are also a part of respondent’s course of conduct constituting indignities. The evidence recited is sufficient to entitle libellant to a divorce on the ground of indignities consisting of a course of conduct by respondent which was humiliating, degrading, and inconsistent with libellant’s position and relations as a wife. See
 
 Wick v. Wick,
 
 352 Pa. 25, 28, 42 A. 2d 76. This is our conclusion from our independent examination of the lengthy record.
 

 The decree of the court below is reversed, and the record is remitted with direction that a decree be entered by that court granting to libellant a divorce from the bonds of matrimony on the ground of indignities to the person.
 

 [1]
 

 Rules of Civil Procedure relative to action of divorce, Nos. 1121-1136, became effective June 1, 1948.
 

 [2]
 

 As to similar facts constituting desertion, see
 
 Krebs v. Krebs,
 
 109 Pa. Superior Ct. 175, 167 A. 249;
 
 Reiter v. Reiter,
 
 159 Pa. Superior Ct. 344, 48 A. 2d 66;
 
 Heimovitz v. Heimovitz,
 
 161 Pa. Superior Ct. 522, 55 A. 2d 575.