## Scanga *v.* Scanga, Appellant.

134

Argued April 12, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Clyde P. Bailey,* with him *Dane Critchfield* and *Bailey & Critchfield,* for appellant.

*William H. Colvin,* with him *Pritchard, Lawler, Malone & Geltz,* for appellee.

OPINION BY RENO, J., July 20, 1950:

The husband sued for a divorce alleging cruelty and indignities, and by an amendment the charge of desertion was added. At the hearing before a judge without a jury only the charge of desertion was pressed. A divorce was granted upon that ground.

The wife appealed and, after the expiration of the term and after he had notice of the appeal, the hearing judge vacated the decree. Later, on November 21, 1949, he entered an order refusing a decree and dismissing the complaint. In the opinion accompanying the order he explained his action: "After hearing the case, counsel

was called into chambers and told that we would not be willing to grant a divorce, but inasmuch as the parties were so hopelessly estranged we would grant a divorce if he made a satisfactory settlement with his wife. Later, counsel for libellant said he had the money to make a settlement, and we signed a decree thinking a settlement had been made. When it was found that the settlement was refused the court revoked the decree. The court was more impressed with the testimony and the conduct of the respondent than [that of] the libellant and we therefore refuse the divorce." Upon the husband's petition for a writ of prohibition, this Court annulled the order and decree entered after the filing of the appeal, leaving in force only the original decree granting the divorce.

While the judge obviously exceeded his powers there is no occasion to question his motives. The parties are indeed estranged beyond all hope of reconciliation and, since they are holding property jointly, future litigation could have been avoided by an amicable settlement. However, when he determined that the husband's case was without merit, he should have refused the decree. Our independent study of the testimony has induced the conclusion that the hearing judge's initial conclusion was correct, and the decree brought up by this appeal will be reversed.

The husband charges that his wife deserted him on June 28, 1946. On that date they were living together in their common abode. Admittedly on that date she left his bed and thereafter slept in another room with a daughter until July 9, 1946, when he left the home and never returned. He sought to bring himself within *Reiter v. Reiter*, 159 Pa. Superior Ct. 344, 349, 48 A. 2d 66, where Judge ARNOLD, speaking for this Court, after an illuminating discussion of the principles relating to what had been loosely called "constructive desertion", concluded: "In the type of desertion now discussed the

libellant must be wilfully and maliciously put out [of the home] by force or justifiable fear of immediate bodily harm, or locked out against the will, and without the consent, of the innocent spouse." (See also *Heimovitz v. Heimovitz*, 161 Pa. Superior Ct. 522, 55 A. 2d 575.) In his examination in chief he testified: "Q. When did any trouble occur between you? A. It had occurred on and off before June 28th. Q. Prior to June 28th had everything been all right? A. Why, no. She nagged me and she wouldn't sleep with me; go and sleep with the children; and she wouldn't wash and wouldn't iron my clothes for me. Q. On June 28th did she leave your bed? A. On June 28th she left my bed and went to sleep with the children. Q. Have you ever cohabited as man and wife since that time? A. No, I have not." Manifestly this testimony did not prove justification for leaving as laid down in the *Reiter* case.

If the case had been left in that posture there could have been no doubt of the decision; for the husband's offer to return, to which reference will be made, also failed to meet the test of the *Reiter* case. But respondent's counsel, in the words of the hearing judge, "opened the door very wide with your [his] cross examination." As a result further elements were introduced into the picture which need brief consideration. The parties were married in 1927; she was then 17 years old; he was 28. They have two children; a daughter, 20 years old, lives with the father; and the son, 12, resides with the mother. For at least 10 years the parties have brawled and quarreled, sometimes resorting to violence, and they accuse each other of extra-marital attachments. He left the domicile once before; and on January 30, 1946, he instituted an action in divorce. In April of that year they effected a reconciliation; he withdrew the action; and returned home. During the three months that he remained there, he testified, still on cross examination, that she threatened to kill him, and that his daughter

was present. But the daughter, called as a witness for her father, testified that the incident occurred before the April 1946 reconciliation. Therefore, it cannot be held that he left the home under a "justifiable fear of immediate bodily harm."

The record is replete with other incidents, most of which occurred before the reconciliation and have no bearing upon the second separation. His statement of the reasons for leaving is clearly insufficient to sustain a divorce on the ground of desertion. For her part she testified that dissensions arose because he returned home late at night in an intoxicated condition, and that she left his bed because in that condition he demanded unnatural sexual intercourse. Although the trier of the facts believed her, whether her testimony is true or not is not necessarily decisive; for in any event he has not shown facts which justified his leaving under the doctrine of the *Reiter* case.

Appellee testified: "I called her up [on the telephone] around the first part of December, 1946 and asked her if she would be good I would come back with her and she said, 'Don't you dare to step in this house or you will be dead.' ". Appellant's attention was not directed to this testimony, and so she neither affirmed or denied it. But the hearing judge was not required to believe even uncontradicted testimony, and obviously he did not give credence to it. Besides, an accusatory and conditional offer of reconciliation ("if she would be good") lacks the benign spirit of an honest invitation to resume peaceful marital relations, and a telephone offer, where both parties reside in the same city, is open to the suspicion that it was not extended in good faith. Cf. *Wilhelm v. Wilhelm,* 130 Pa. Superior Ct. 143, 197 A. 496; *Cobaugh v. Cobaugh,* 160 Pa. Superior Ct. 362, 51 A. 2d 354.

Decree reversed at appellee's costs.