Jeanette *v.* Jeanette, Appellant.

Argued September 15, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, and FLOOD, JJ. (RHODES, P. J., and MONTGOMERY, J., absent).

*Philip Richman,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY ERVIN, J., November 16, 1961:

This is a divorce case in which the master recommended a decree of divorce a.v.m. in favor of the plaintiff, Victor Jeanette, against his wife, Marietta Jeanette. After the dismissal of the defendant's exceptions the court below entered a decree of divorce a.v.m. The wife-defendant appealed.

The parties were married on October 7, 1940 at Elkton, Maryland. At the time of the marriage the defendant was living with her parents at 920 Morris Street, Philadelphia, Pennsylvania, and the plaintiff was living with his sister at 1605 Ritner Street, Philadelphia, Pennsylvania. After the marriage the parties did not live together but continued to live with their parents and sister until sometime in 1943, when they lived together for about three months in the home of the wife's parents at 920 Morris Street. They then separated again and did not live together until 1956. In the meantime the wife's parents had died and she inherited from them the home at 920 Morris Street. After living together for about five months in that home the parties again separated on July 20, 1956. There were no children born of the marriage.

Throughout the entire period of the marriage the wife worked in a cigar factory and the husband worked in a plant which made bathing suits. In January 1957 the wife obtained a support order of $5.00 a week against her husband which later was raised to $7.00 a week. On February 25, 1957 the plaintiff-husband commenced an action in divorce founded upon indignities to the person and cruel and barbarous treatment. On November 1, 1957 the case was terminated by a court order so that the parties could make an effort to effect a reconciliation. The present action for a divorce a.v.m. on the ground of desertion was commenced by the plaintiff on April 27, 1959.

The plaintiff-husband testified that on the evening of July 20, 1956 he was playing cards in a taproom near 920 Morris Street when the defendant appeared and informed him that she was going to visit her sister. She asked the plaintiff to go with her. He said he did not want to leave until he finished playing cards and she asked him to call her at the sister's house when he had finished. At about 10:15 that night the plaintiff went to the home at 920 Morris Street and called the house of the defendant's sister. When the sister answered the plaintiff asked her in a joking manner for a loan. Later in the conversation he explained to the sister that he was only joking and he then asked to speak to his wife. The wife told him that she would be home directly. When she arrived home she was quite angry and almost "wild." She demanded to know why he had asked her sister for money. She said to him: "Who the hell do you think you are? You get the hell out of this house. . . . If you stay in this house another minute, I will kill you." When the plaintiff, who was suffering from a sprained ankle, attempted to telephone for a taxi the defendant interfered with the call and stated that she would drive him to his sister's house. The defendant then drove the plaintiff to 1502 Morris Street, Philadelphia. She left the car before the plaintiff and yelled at the sister: "Get that brother of yours out of my car . . . that drunken bum. I don't want to ever see him again." The defendant then demanded the plaintiff's house key. When he demurred she drove to her house, took the remainder of his clothes and returned to the Morris Street address and threw them over the steps. She again demanded the key, and threatened to kill him if he refused. At this point plaintiff gave his key to the defendant. After stating that she was going to change all the locks, the defendant then left.

Four witnesses testified as to the altercation that took place outside of 1502 Morris Street. They were the plaintiff's sister, his brother-in-law, a lunch room proprietress whose place of business was at 1500 Morris Street, and a patron of a taproom which was situated at 1501 Morris Street. Their testimony corroborated the plaintiff. The defendant-wife made a complete denial of the plaintiff's story. The date, she contended, was July 21, 1956 and her testimony was that she had been at home while the plaintiff was out and had sought him at the taproom to request his presence at the house. He refused her request and when he did arrive home he was drunk, and after an ensuing argument stated that he was leaving. He allegedly admitted "having" another woman, insulted the defendant and went out to the car, taking his clothes with him. The defendant then drove him to 1502 Morris Street because she felt he was in no condition to drive. She presented in corroboration of her story Mary Soberaj, who had worked with the defendant at the cigar factory for many years.

The plaintiff testified that he called his wife on the phone several times after the separation and that she always hung up on him; that about 18 months after the separation he attempted to visit her home but she would not let him in; that for a period of two years after July 20, 1956 she at no time offered to resume marital relations with him; that she never wrote him any letters; that he has never had any marital relations with her since the separation and has never gone out with her or had any association with her since that time.

The defendant testified that she called his house on the phone half an hour after the separation and that he hung up; that she called on July 22, 1956 about 10 times but was told that he was not there. She testified to visits which he made to her home after July 20, 1956 and that she had sexual intercourse with him a number

of times after that date. Defendant's sister testified that the parties visited her on several occasions after July 20, 1956 and a young 19-year old boy who lived across the street from defendant testified that he saw the plaintiff leaving 920 Morris Street on Easter 1959, and that on a few other occasions he saw the plaintiff go into the house using a key "if he was not mistaken."

As will be seen, the above stories are diametrically opposed and the question is largely one of credibility of the witnesses. We have read the entire record and it is our independent conclusion that the question of credibility was properly decided by the master and the court below. As was so well said by the master: "Grave doubt must be cast on the testimony of the Defendant, particularly as to the resumption of friendly relations between herself and her husband after the admitted separation, accompanied by actual co-habitation and sexual intercourse, in view of the fact of the pendency of two divorce suits and hostile proceedings for support in Municipal Court during this period."

The vagueness and uncertainty, both as to incidents and identification, in the testimony of Anthony J. Popolo, the boy who lived across the street, makes his testimony of no real probative value.

The testimony of defendant's sister is beclouded by the fact that she had no knowledge of the divorce proceedings between the parties although she claimed a close relationship with her sister and her husband.

This case is ruled by *Dukenfield v. Dukenfield,* 177 Pa. Superior Ct. 215 (allocatur refused ibid xxvi), 110 A. 2d 858. In that case we said, at page 217: "The wife now alleges that his testimony is insufficient to support a divorce on the ground of desertion, since she remained in the home and did not evict him with force or violence. A case of desertion, however, is maintained where a wife locks her husband out of the house without justification and without his consent, refuses

to let him return and persists in such refusal for two years: Heimovitz v. Heimovitz, 161 Pa. Superior Ct. 522, 55 A. 2d 575; Scanga v. Scanga, 167 Pa. Superior Ct. 133, 74 A. 2d 723. In that respect, a husband and wife are on an equal footing before the law."

The evidence in this case clearly establishes that the husband was locked out; that he attempted to gain entrance to the house so that he could attempt a reconciliation but that she refused to permit him to enter. The record also shows that he made a number of attempts toward reconciliation but that they were refused. In *Reiter v. Reiter*, 159 Pa. Superior Ct. 344, 349, 48 A. 2d 66, we said: "In the type of desertion now discussed the libellant must be wilfully and maliciously put out by force or justifiable fear of immediate bodily harm, *or* locked out against the will, and without the consent, of the innocent spouse." (Emphasis supplied) Constructive desertion occurs when either one of the two acts occur, (1) being put out by force or justifiable fear of immediate bodily harm, or (2) being locked out against the will or without the consent of the innocent spouse. We believe that both of these acts occurred in the present case. It might be argued that the plaintiff was not in justifiable fear of receiving immediate bodily harm but he testified that the defendant went toward the kitchen and he could well have believed that she was doing so for the purpose of getting a knife with which to enforce her threat. Be this as it may, it is clear that the record reveals a locking out of the plaintiff against his will and without his consent and that he endeavored to effect a reconciliation on several occasions after July 20, 1956 but was unable to do so because of the refusal of the defendant. This condition remained for more than a two-year period and constituted a constructive desertion.

An analysis of our decisions, conflicting though they may appear, reveals an overwhelming support of the

principle of constructive desertion: Freedman, Law of Marriage and Divorce in Pennsylvania, Vol. 1, 2d ed., at p. 596.

A desertion may occur notwithstanding the fact that the defendant still remained in the common habitation. The statute does not require absence from the common habitation but does require "absence from the habitation of the injured and innocent spouse": 23 PS §10(d). This would be the place to which the innocent spouse has fled for refuge.

The defendant did obtain a support order against the plaintiff and this is a relevant matter to be considered but it is not conclusive on the subject of desertion: Copeland v. Copeland, 155 Pa. Superior Ct. 102, 38 A. 2d 364.

Decree affirmed.