## Wells, Appellant, *v.* Wells.

Argued November 12, 1962.   Before RHODES, P. J., ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (WOODSIDE, J., absent).

*Dail E. Sloan*, with him *Eugene C. Sloan*, and *Thomas H. Hudson, Jr.*, for appellant.

*Joseph E. Kovach*, for appellee.

OPINION BY RHODES, P. J., December 12, 1962:

This is an appeal by wife-plaintiff from a decree of the Court of Common Pleas of Fayette County dismissing her complaint in divorce on the grounds of desertion and indignities.

The issues presented on this appeal, with a record of about 500 pages, are: (1) Could the court in banc, being constituted differently from the court which heard the argument, enter the final decree; (2) did the master err in failing to make specific findings of fact in the form provided by the local court rules; (3) was a finding of the court with respect to cohabitation during a certain period contrary to fact; and (4) was appellant entitled to a divorce?

At the time of argument on exceptions to the master's report before the court in banc in June, 1959, the court in banc consisted of President Judge BANE and Judges MUNSON and DUMBAULD. At the time the court in banc entered a final order in August, 1961, dismissing plaintiff's exceptions, the court in banc consisted of President Judge BANE and Judges MUNSON and FEIGUS.

There is no merit in plaintiff's contention that the change in the court in banc invalidated the final order and decree.

A court in banc has the authority to transact business as long as the number of judges is not reduced below that legally required for the transaction of its business. *Com. v. Petrillo,* 340 Pa. 33, 48, 16 A. 2d 50; *Com. ex rel. Gregory v. Gregory,* 188 Pa. Superior Ct. 350, 356, 146 A. 2d 624; *Lockhart v. Longmore,* 189 Pa. Superior Ct. 455, 459, 151 A. 2d 829. Nor is there error regarding the conformity of the master's report to court rules. Plaintiff maintains that the master did not make specific findings of fact on the merits, contrary to the local court rules, and that the findings which were made were mere conclusions. In view of

the clear, extensive, and detailed discussion of the facts by the master in his report, and the law applicable, under the heading of "Discussion," we are of the opinion that no useful purpose would be served in re-submitting the record to the master. There has been a substantial and adequate compliance with the rules of the Court of Common Pleas of Fayette County.

Another issue presented on this appeal is whether there was error in denying the divorce. In divorce cases heard without a jury we are obliged to review the record and make an independent determination as to whether the evidence warrants a decree. *Manley v. Manley*, 193 Pa. Superior Ct. 252, 254, 164 A. 2d 113; *Levitz v. Levitz*, 199 Pa. Superior Ct. 327, 185 A. 2d 620.

Plaintiff, Mary B. Forsyth Wells, now seventy-six years of age, and defendant, William C. Wells, now sixty-nine years of age, were married at Greensburg, Pennsylvania, on January 8, 1916. On March 12, 1916, a child, Ruth, was born. In June, 1928, she died at the age of twelve.

At the time of the marriage, defendant resided on his father's farm in Jefferson Township, Fayette County. Shortly thereafter he obtained employment with the American Express Company in Donora, Washington County. He purchased a seven-room frame house in Donora, made arrangements to purchase furniture in Pittsburgh, and requested his wife, the plaintiff in this action, to reside with him in Donora. He was given assurance of a better position in Donora with the American Steel and Wire Company. Plaintiff refused to leave her home in Jefferson Township, the Forsyth home.

The parties continued an amicable relationship during the early years of the marriage. Defendant visited plaintiff and the child two or three times a week, and gave such maintenance and support to his wife and child as plaintiff requested.

In 1920, defendant obtained a position with Lobar Gas and Coal Company, near Fayette City, made arrangements to reside at that place, but again plaintiff refused to leave her home.

In 1921, defendant advised his wife that he could obtain work at a good rate at Smock, Fayette County; that a company house was available to them; and that the offer of the job was contingent upon his residing there. Plaintiff refused to go to Smock, saying that she would not live in a coal patch.

Finally, on December 7, 1921, defendant purchased the farm in Jefferson Township on which he has since resided. It is situated along a public highway leading from Newell, in Fayette County, to Routes 711 and 51, in a "built up" populated community, and is within five miles of the home where plaintiff resides.

Defendant's farm consists of approximately fifty-two acres of land upon which a nine-room frame dwelling is erected. After purchasing this property defendant made improvements and repairs such as adding a bathroom with proper equipment, a Delco light plant to provide electricity, a system to bring water into the home from a spring, and laid cement walks. Prior to the purchase of the farm, he talked about it with his wife who refused to say anything, and who also refused to reside there with defendant though often requested to do so.

Defendant stated that his wife's reason for refusing to live at this place with him was that it was too far back in the country although there was no difference in this respect except that from her home Brownsville could be seen while from his home it could not.

Defendant furnished his home with adequate furniture obtained from Kaufmann's in Pittsburgh, and apparently it was a modern and comfortable home.

Despite the continued weekly visits of defendant and his repeated requests that his wife and daughter

live with him, plaintiff refused with the result that defendant instituted an action in divorce in the Court of Common Pleas of Fayette County, at No. 2288, December Term, 1922, charging the plaintiff in this present action with desertion. Subsequent to a hearing before the master, but prior to a determination of the cause, the parties entered into an amicable agreement dated April 7, 1924. By its terms plaintiff agreed to pay counsel fees for her husband's attorney in the amount of $100; to resume her marital relationship with defendant and move with the daughter to the home of defendant within ten days from the date of the agreement. Defendant's divorce proceedings were then discontinued. Plaintiff paid her husband's attorney, but failed and refused to carry out the other provisions of the agreement, and continued to reside in her own family home with her daughter and her brother.

Plaintiff and defendant entered into an agreement on March 29, 1926, with Roy Rhodaback and Anna C. Rhodaback. The agreement provided that the Rhodabacks were to perform the labor on the farm; that they were to share in the proceeds of the sale of the farm products; and that they were to have possession and use of the greater portion of the Wells home for a rental of $120 a year. Defendant was also to reside in his home, to have the exclusive use of one bedroom, to be served his meals by the Rhodabacks for which he was to pay thirty-five cents per meal, and to be permitted to bring his friends and relatives there, for whom, when served with meals, he was to pay a like rate. The Rhodabacks were to keep the house in proper order and to do the chores on the farm. All the furniture, household goods, and machinery and equipment on the farm were the property of defendant. The Rhodabacks moved into the Wells home in April, 1926, and began the operation of the farm.

Plaintiff continued to reside in the Forsyth home until February, 1928, when, at the insistence of defendant, she and the daughter moved into the Wells home. At that time the child was very ill, had been hospitalized, and needed further medical attention. Plaintiff did not bring clothes or other belongings with her for herself and child; some clothes were purchased by mail order and paid for by defendant.

Because the child was ill, a bedroom was provided for plaintiff and the child in a downstairs room, and the testimony reveals that the Wells family had ample use of the house as needed. Mrs. Rhodaback did all the housework and prepared all the meals, for which defendant paid.

Nine weeks later, in May, 1928, plaintiff withdrew from the home of her husband and returned with her child to the Forsyth home, where, on June 12, 1928, the child died. Plaintiff paid the funeral expenses. Plaintiff testified that she left because defendant was "going out at night," and that there was undue noise which caused an unbearable condition for her. She further testified that she had known him to go out with Mrs. Rhodaback.

From May, 1928, plaintiff has continuously resided with some member of her own family at the home of her birth; defendant has continuously resided in the home which he purchased on December 7, 1921.

On October 12, 1928, Mrs. Rhodaback left the Wells premises, and in December of the same year her husband also left the Wells home, remaining after Mrs. Rhodaback long enough to dispose of his cattle and grain. Defendant sought other help, and for a time obtained the services of a Mrs. Graham and her sixteen-year-old son, but this arrangement was of brief duration.

At No. 182, December Term, 1929, Roy Rhodaback instituted a divorce proceeding in the Court of Com-

mon Pleas of Fayette County charging his wife, Anna C. Rhodaback, with the commission of adultery and naming the defendant, William C. Wells, as co-respondent. Defendant testified that he never had knowledge of such divorce proceeding until the matter was brought to his attention at a hearing held in 1953 on the application of plaintiff to be permitted to become a feme sole trader, which application was denied. Roy Rhodaback took no further action, and the Rhodabacks never resumed their marital relationship. Mr. Rhodaback died in 1938.

At the request of defendant, Mrs. Rhodaback resumed working for him in December, 1929, working three days a week. She continued working on the same basis during the months of January and February, 1930, but in March, 1930, she resumed working for defendant on a full-time basis. After March, 1930, except for periods when she was ill, Mrs. Rhodaback continued to reside in the home of defendant, and performed all of the services of a housekeeper, and in addition did work on the farm. She received board and lodging, a share of the profits from the sale of farm products, and, after 1954, according to the testimony of defendant, in lieu of a division of profits from the sale of farm products received $5 a week. After March, 1930, in addition to Mrs. Rhodaback and defendant, certain young men did work about the farm and received their board and lodging from defendant.

One witness testified seeing defendant and Mrs. Rhodaback lying on a bed together in a room or porch off the kitchen at 4 a.m. fully clothed and talking. Anther testified that, on one occasion when defendant returned from a trip to Pittsburgh in 1928, Mrs. Rhodaback went upstairs where the defendant had gone and remained there for at least a half hour.

To show defendant's reputation, witnesses testified that both Mrs. Rhodaback and defendant were active

in church affairs, and that defendant held the office of moderator for a number of years and was presently a trustee of the church.

After reviewing the voluminous record we must conclude that the facts do not support the charge of desertion. In order to constitute the type of desertion which plaintiff seeks to establish, plaintiff must prove that she left the home of defendant because she was wilfully and maliciously put out by force or justifiable fear of immediate bodily harm, or locked out against her will and without her consent. *Reiter v. Reiter,* 159 Pa. Superior Ct. 344, 349, 48 A. 2d 66; *Jeanette v. Jeanette,* 196 Pa. Superior Ct. 295, 300, 175 A. 2d 145. Plaintiff has not produced evidence to show conduct on the part of defendant which would justify the voluntary withdrawal of plaintiff from the home or her refusal to live with him.

The charge of indignities is based largely, if not altogether, on the fact that since 1928, with few intermissions, defendant and Mrs. Rhodaback have been the occupants of defendant's home with the exception of various hired help. Plaintiff, in effect, wishes to have this occupancy determined to be "legal indignities" per se. Defendant and Mrs. Rhodaback, on the other hand, vehemently deny that their relationship throughout the years has been anything other than that of employer and employe. Moreover, there is no acceptable proof of adulterous conduct. There is nothing to indicate that plaintiff would have lived with defendant if Mrs. Rhodaback had not been there. We agree with the statement in the opinion of President Judge BANE of the court below that "Her excuse, some years later, that her husband had a housekeeper living in his home as being the cause for her failure to return to him, is without merit."

Although condonation is not a defense to the charge of indignities, the extremely long delay in the institu-

tion of this action casts some doubt upon the good faith and sincerity of plaintiff in seeking a divorce for the causes averred in her complaint. *Garroway v. Garroway*, 163 Pa. Superior Ct. 317, 319, 61 A. 2d 379.

The master recommended that a decree in divorce be refused, and that the complaint of plaintiff be dismissed because defendant did not wilfully and maliciously absent himself from the home and habitation of plaintiff, and did not offer such indignities to the person of plaintiff as to render her condition intolerable and life burdensome.

We are likewise of the opinion that plaintiff did not establish either the desertion or the indignities which she alleges in her complaint.

The court below stated in its opinion: "The wife did not live with her husband after this agreement, and offered no sufficient excuse for not so doing." Plaintiff maintains that, since the record is clear that plaintiff did live with defendant subsequent to the agreement, this finding was in error.

Our careful reading of the court's opinion indicates that in this finding the court was referring to the ten-day provision of the agreement of 1923. In this light the finding is not in error. Plaintiff did not in fact live with defendant until 1928, and then for a period of only nine weeks.

The decree of the court below is affirmed.