Shoup *v.* Mannino, Appellant.

458

Argued November 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Thomas D. Thomson*, with him *Pringle, Bredin & Martin*, for appellant.

*Louis C. Glasso*, for appellee.

OPINION BY HIRT, J., March 18, 1959:

The plaintiff at the end of his workday as a stationary engineer in Magee Hospital in Pittsburgh, arrived at his home shortly after midnight on the morning of July 17, 1954. In preparation for leaving with

his parents on a vacation later in the same morning he was on his way to have his car serviced by a friend, one Sarinec, who was a night employe at a service station in the neighborhood. As he was driving his car eastwardly about 2:30 a.m. on East Ohio Street in Pittsburgh, between street intersections, the defendant backed his automobile out of a gas station on the north side of the street directly in the path of plaintiff's car. A collision was inevitable. There were parked cars along the north curbline of the street which concealed the defendant's car as it moved into the street. Moreover, defendant backed into the plaintiff's lane of traffic, without sounding his horn; it was dark and there were no lights on his automobile. Under the record before us the defendant clearly was guilty of negligence which proximately caused plaintiff's injury. It was not disputed that the damage to plaintiff's automobile was $1,126.92. Plaintiff was thrown from the driver's seat of his automobile to the pavement, and was injured. The jury found for the plaintiff, for both personal injuries and damage to his car, in the sum of $6,000. By remittitur filed, this verdict was reduced to $4,000; a new trial was refused by the court en banc and judgment was entered in that amount.

The defendant's appeal from the refusal of a new trial is related to a narrow question. As plaintiff approached the place where he expected to have his car serviced, he observed Sarinec driving out of the service station. Plaintiff followed him to the "North Side" and joined him in a restaurant there for a sandwich and some beer. It was on his return that plaintiff's car was struck by the defendant when he backed his car into East Ohio Street. Police officers who came to the scene immediately after the accident, took both plaintiff and defendant to a police station. Subse-

quently the plaintiff alone was taken to the office of a Dr. Donoghue whose duty, in the employ of the County of Allegheny, was to examine persons, referred to him by the police, for intoxication tests. Dr. Donoghue testified that, in the main, plaintiff's reactions were normal but that he detected a "faint" odor of alcohol on plaintiff's breath. In his opinion the odor was that of whiskey and not beer. The doctor testified: "In taking into consideration everything on this sheet [i.e., his notes which he had made of his findings from his examination of the plaintiff] I pronounced him slightly under the influence of liquor and not able to drive an automobile." Immediately following that statement of the witness this occurred according to the record on cross-examination of Dr. Donoghue by Mr. Glasso, plaintiff's counsel: "Q. You pronounced him slightly under the influence of intoxicating liquors, is that right? A. That is right. Q. From which charges he was acquitted in Criminal Court, is that right? Mr. Thomson [for the defendant]: I object to that. Mr. Glasso: You know that to be the truth. The Court: Just a minute. What is your motion, Mr. Thomson? Mr. Thomson: I ask the Court to instruct the jury to disregard anything said by Mr. Glasso and I ask the Court to request Mr. Glasso not to go into these matters anymore because they are entirely improper . . . The Court: Your motion with respect to striking the question of Mr. Glasso—I guess the statement of Mr. Glasso—will be stricken. Strike that." ·

In general, judgments of acquittal in criminal trials are not admissible as evidence. of the fact that a plaintiff in a civil action did not cause the loss. "All that such disposition of a criminal case establishes is that the evidence was insufficient to convict beyond a reasonable doubt,—a quantum of evidence greater than that required to establish a fact in a civil case": *Mineo*

*v. Eureka Sec. F. & M. Ins. Co.,* 182 Pa. Superior Ct. 75, 125 A. 2d 612; cf. *Bobereski, Adm. v. Ins. Co. of Pa.,* 105 Pa. Superior Ct. 585, 161 A. 412. But that settled principle of law does not control the single question involved in this appeal.

On cross-examination of the plaintiff, defendant's counsel stressed the fact that immediately after the accident the plaintiff had been taken to the police station by the officers; that he was detained there until he had posted bond and that he then was taken to the office of Dr. Donoghue. The question of the plaintiff's sobriety was directly put in issue by the testimony of Dr. Donoghue on direct examination, when called as a defense witness. The fact of plaintiff's arrest immediately after the collision was openly disclosed to the jury in the direct statement of this witness: "I asked where he was arrested at and he said on East Ohio Street". From the cross-examination of the plaintiff by defendant's counsel, therefore, coupled with the testimony of the medical witness, that plaintiff was intoxicated to a degree, it was apparent to the jury that the charge upon which the plaintiff had been arrested was operating his car while under the influence of intoxicating liquor.

Ordinarily it is highly improper to inject into the trial of a civil case the fact that a party to the action had been acquitted of a criminal charge, growing out of the same circumstances. But that principle has no application here. The fact that plaintiff had been arrested and, by the strongest inferences, on a charge of drunken driving was first brought into the case by the defendant. In general the principle that inadmissible statements in the record on one side of the case allows the other party to resort to similar inadmissible evidence, is limited in scope. *Donegal Twp. School District v. Crosby,* 171 Pa. Superior Ct. 372, 90 A. 2d 341.

But that principle of limited pertinency was applicable here. Under the circumstances the plaintiff could not have been precluded from developing in the record the fact of his acquittal of the charge upon which he had been arrested. In *Western Show Co., Inc. v. Mix*, 315 Pa. 139, 142, 173 A. 183, our Supreme Court raised and answered a similar question in this language: " 'If irrelevant and collateral matter is elicited [by appellant], without objection, from plaintiff's witness on cross-examination, can the plaintiff rebut such collateral matter by the testimony of other witnesses?' Appellant can hardly be heard to raise this question. The injection by it of the 'irrelevant and collateral matter' into the case, left plaintiff but a single choice; it had either to offer no evidence in answer to it, and thereby risk its possible effect on the jury, which it had no way of measuring; or it could offer the rebutting evidence and take the risk of a reversal because of the doctrine now advanced by appellant. No court of justice should put a litigant to such an alternative; rather it should permit him, by means of contradictory evidence he had on hand, to rebut, as far as he could, the erroneous evidence elicited by his antagonist. Anything short of this would not even savor of fairness." Cf. *Helmick v. South Union Township*, 323 Pa. 433, 440, 185 A. 609.

In any view, however, the defendant waived his objection to the statement that plaintiff was acquitted of the criminal charge. Defendant made no motion to withdraw a juror. Instead, the defendant refrained from pursuing the matter further, and no exception was taken to the action of the trial judge in merely ordering the question, which contained the statement, stricken. Having sat by and taken his chances on a favorable verdict the defendant is now in no position to complain because the verdict was adverse.

Judgment affirmed.