## Pedretti *v.* Pittsburgh Railways Company, Appellant.

Argued March 17, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John Ward Hindman,* with him *Prichard, Lawler & Geltz,* for appellant.

*John M. Feeney,* with him *Irwin M. Samuels,* and *McArdle, Harrington, Feeney & McLaughlin,* for appellee.

OPINION BY MR. JUSTICE JONES, April 20, 1965:

At approximately 9:00 p.m. on May 20, 1956, James Pedretti (Pedretti), boarded a street car of the Pittsburgh Railways Company (Railways), at Wood Street, Pittsburgh, en route to the Beltzhoover section of that city. At the so-called "Boggs Stop" of the Railways—a usual stopping place for its street cars—Pedretti alighted from the street car. At that stop,—located upon the Railways' private right-of-way—,there are two separate platforms, one of which is located along the outbound track and the other along the inbound track. Both platforms are connected by an asphalt crossing owned by the Railways, which crossing serves as a means of egress by way of leading to nearby Sylvania Avenue.

After Pedretti had left the street car, he proceeded across the asphalt crossing and, at a point near the fourth or outside rail of the inbound tracks, he claims to have fallen by reason of his left foot dropping into a hole located within the asphalt crossing.

Pedretti instituted a trespass action in the Court of Common Pleas of Allegheny County against the Railways. After a trial, the jury found a verdict for Pedretti and against the Railways in the sum of $51,500. Railways filed a motion for a new trial. After argument of this motion, the two-judge court en banc, consisting of Judge BROSKY, the trial judge, and Judge SMITH, divided: Judge BROSKY favored refusal of a new trial while Judge SMITH favored the grant of a new trial. However, both judges agreed the verdict was excessive and that it should be reduced by $10,000, a reduction which Pedretti accepted. From the judgment entered on the verdict this appeal was taken.

The Railways raises four questions, three relating to alleged trial errors and the fourth to the alleged excessiveness of the verdict.

Initially, we consider the most serious of the questions raised, one which concerns an alleged error in the court's charge to the jury. Inter alia, the court instructed the jury: ". . . and then we conclude these principles affecting the carrier by saying that where there occurs an injury to a passenger, let's say, such as happened here to Mr. Pedretti, and that injury is caused by a defect in the crossing, such as the type as alleged here to have caused Mr. Pedretti's accident, then *we do have a legal presumption of negligence, placing upon the Defendant thereupon the burden of disproving such negligence.* Now, you notice I said a legal presumption of negligence; that presumption can be rebutted, of course, by the [Railways]." (Emphasis supplied).

It is well settled that, while not an insurer of the safety of its passengers *(Seburn v. Luzerne & Carbon*

*County Motor Transit Co.*, 394 Pa. 577, 580, 148 A. 2d 534; *Archer v. Pittsburgh Railways Co.*, 349 Pa. 547, 37 A. 2d 539), a carrier does owe to its passengers the highest degree of care for their safety (*Seburn*, supra; *Archer*, supra). Moreover, *under certain limited circumstances*, this Court has recognized that a presumption may arise that an accident resulting in injury to a passenger was caused by the negligence of the carrier and that the carrier is called upon to disprove such negligence. This doctrine, with its limitations, was well expressed in *Orms v. Traction Bus Co.*, 300 Pa. 474, 476, 150 A. 897: "Prima facie, where a passenger on a common carrier is injured, without fault of his own, by the carrier, its employees or anything connected with the appliances of transportation, a legal presumption of negligence is cast on the carrier which it must disprove: [citing authorities]. But, . . ., it is not every injured passenger who can recover damages in an action against a common carrier transporting him at the time he sustains his injury. 'No presumption of negligence arises merely from the fact that the plaintiff was injured while a passenger.' *The rule is limited by the manner in which the passenger received his injury*. Where an accident is occasioned by a third person, or some instrumentality outside the conveyance, the carrier is not responsible for the injury; there must be evidence tending to connect the carrier or some of the appliances with the injury: [citing authority]." (Emphasis supplied). See also: *Zaltouski v. Scranton Railway Co.*, 310 Pa. 531, 534, 165 A. 847; *Miller v. Pennsylvania R. Co.*, 303 Pa. 524, 154 A. 924. In *Thomas v. Phila. & Reading Railroad Co.*, 148 Pa. 180, 183, 23 A. 989, we said: "But to throw this burden [that of proving such injury was in no way the result of its negligence] upon the carrier, it must first be. shown that the injury complained of resulted from the breaking of machinery, collision, derailment of cars, or

something improper or unsafe in the conduct of the business, or in the appliances of transportation."[1]

The instructions given by the trial judge as to this presumption of negligence were erroneous under the instant factual situation. Clearly, the accident which is alleged to have occurred did not arise from the means, manner or appliances of transportation and no presumption of negligence arose under the circumstances.

The trial judge relied upon *Archer v. Pittsburgh Railways*, supra, *Takac v. Bamford*, 370 Pa. 389, 88 A. 2d 86, *Branch v. PTC*, 374 Pa. 60, 96 A. 2d 860, and *Mack v. Pittsburgh Railways Co.*, 247 Pa. 598, 93 A. 618, but such authorities are presently inapposite. In *Archer*, the injury to the passenger arose from the failure of the motorman to properly control the operation of the street car door, i.e., the manner of operation of the carrier. In *Takac*, the injury allegedly arose from defective brakes, i.e., a defect in the equipment of the carrier. In *Branch* and *Mack*, the Court did not apply the presumption which the trial judge did in this case but held that a passenger has the right to assume that station platforms and steps of a carrier are reasonably safe for the purposes intended without relieving the injured passenger from showing negligence on the part of the carrier. *Cuneo v. PTC*, 405 Pa. 532, 537, 176 A. 2d 896, upon which Pedretti, in addition, relies, is factually inapposite to the instant situation.[2]

---

[1] The rationale for placing the burden upon the carrier in such circumstances is threefold: (a) the contractual relationship between the carrier and the passenger; (b) the cause of the accident is generally better known to the carrier than the passenger; (c) the accident ordinarily would not occur if the carrier was using due care. See: *Fleming v. Pittsburgh C., C. & St. Louis Ry.*, 158 Pa. 130, 27 A. 858; 10 Am. Jur., Carriers, §1624.

[2] In *Izzi v. PTC*, 412 Pa. 559, 195 A. 2d 784, in denying the application of the exclusive control doctrine to a factual situation entirely different from that in the case at bar, this Court did say:

Pedretti's injury arose from an accident the cause of which was unconnected with the appliances, means or manner of transportation; under such circumstances, no presumption of negligence on the part of Railways arose and the trial judge in charging the jury as to the existence of such a presumption fell into error.[3]

The trial judge, in his opinion, takes the position that, even if this part of the instruction was erroneous, yet an examination of the charge *as a whole* indicates that the trial judge properly set forth the elements necessary to determine Railways' liability by the application of the ordinary principles of negligence. The fallacy of this argument is that we are unable to determine, under the circumstances, whether the jury was misled by the erroneous instruction as to the presumption of negligence. In *Hisak v. Lehigh Valley Transit Co.*, 360 Pa. 1, 6, 59 A. 2d 900, this Court said: "Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting or contradictory one which correctly states the

---

"If a pedestrian, or a person on, or stepping on or off, a trolley car is injured, the trolley car is in the exclusive control of its operating company, yet the principles of negligence and not that of exclusive control apply. If a passenger is injured while walking on a railroad track or while getting on or off a train, . . ., the train is in the exclusive control of its operating company . . ., yet the principles of negligence and not that of exclusive control apply." (412 Pa. at 565). However, if the factual situation in a given case justifies the application of the legal presumption of negligence on the part of the carrier, the case law indicates that such application is by way of res ipsa loquitur rather than the exclusive control doctrine.

[3] See: *Hayman v. Pennsylvania R. Co.*, 118 Pa. 508, 11 A. 815; *Pennsylvania R. Co. v. MacKinney*, 124 Pa. 462, 17 A. 14; *Herstine v. Lehigh Valley R. Co.*, 151 Pa. 244, 25 A. 104; *Bernhardt v. Western Pennsylvania R. Co.*, 159 Pa. 360, 28 A. 140; *Green v. B. & O. R. Co.*, 214 Pa. 240, 63 A. 603; *Duffy v. P.R.T.*, 291 Pa. 564, 140 A. 496; *Baron v. Wilkes-Barre Ry. Co.*, 71 Pa. Superior Ct. 103; *Miller v. Pittsburgh, etc. Rys. Co.*, 102 Pa. Superior Ct. 547, 157 A. 330.

law on the point involved, for the jury, assuming, as is their duty, that the instructions are all correct, may as readily have followed the incorrect as the correct one and it is impossible to know which they accepted: [citing cases]." See also: *Stegmuller v. Davis,* 408 Pa. 267, 182 A. 2d 745; *Lieberman v. PTC,* 410 Pa. 179, 186, 188 A. 2d 719.

That part of the charge which referred to the presumption of negligence was erroneous and the error was such as commands the grant of a new trial.

In view of the conclusion reached, we need not consider whether the verdict was excessive or whether the trial court should have declared a mistrial when Railways claimed one of the jurors was intoxicated.

However, since this matter must be retried, it will not be amiss to consider one other question raised on this appeal because the same question may be presented during the retrial.

During the trial, Pedretti's counsel offered in evidence a photograph (Exhibit 1)[4] which portrayed the general physical conditions at the scene of the accident. Pedretti's counsel had taken a pretrial deposition of a witness who had been one of the first persons to reach Pedretti after the accident and this witness, upon such deposition, had indicated on the photograph, which later became Exhibit 1, the point where Pedretti was lying when she first saw him and she marked such point on the photograph by an "X". Neither the witness nor her deposition were presented at trial by Pedretti's counsel.[5] When Exhibit 1, containing the mark "X" thereon, was offered, Railways objected to the introduction of the photograph unless Pedretti's counsel also offered into evidence the portion of the witness'

---

[4] Another photograph (Exhibit 8), also offered, was an enlargement of Exhibit 1.

[5] As a result, Railways was forced to call the witness and it claims it was prejudiced thereby.

deposition showing the circumstances under which the "X" was placed on the photograph and the significance of the point thereby indicated. The trial court permitted the introduction of the photograph but did not require Pedretti's counsel to present the relevant portion of the deposition of the witness.

Pa. R.C.P. 4020 (a) (4) provides: "If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts". The photograph was a part of the witness' deposition insofar as the mark "X" thereon was concerned.[6] In our view, Rule 4020 (a) (4) supra, requires that, if the photograph *with the mark thereon* is to be received into evidence, then such portion of the deposition of the witness as indicated the circumstances and significance of the mark must be introduced by Pedretti's counsel. Not only the Rule, but common sense dictates this result. The "X" in the photograph, *unexplained,* could only cause surmise and speculation on the part of the jurors. Under the circumstances, Pedretti's counsel had two alternatives: (1) introduce the photograph *without the witness' mark* or (2) introduce the photograph *with the mark* followed by the introduction of such portion of the witness' deposition as would explain to the jury the significance of the mark. In view of the grant of a new trial for another reason, we need not determine whether the action of the trial judge in permitting the offer into evidence of Exhibit 1 under the circumstances constituted *reversible* error.

[6] Railways' brief aptly states: "The transcript of [the witness'] testimony at the deposition with regard to the marking on the photograph was meaningless without the photograph just as was the marking on the photograph meaningless without the recorded transcript of her testimony. Each depended upon the other for meaning and therefore each was part of the other."

Judgment reversed and new trial granted.
Mr. Justice MUSMANNO dissents.