435 A.2d 624

**Margaret SMITH, Appellant,**

**v.**

**Burton CHARDAK and Sherre Chardak.**

Superior Court of Pennsylvania.

Argued Jan. 20, 1981.

Filed Oct. 2, 1981.

174

Michael G. Trachtman, Norristown, for appellant.

Gilbert P. High, Jr., Norristown, for appellees.

Before HESTER, DiSALLE and POPOVICH, JJ.

POPOVICH, Judge:

This action of trespass arises out of injuries suffered by Margaret Smith, appellant, when struck by the vehicle driven by Sherre Chardak, appellee. The jury returned a verdict for the appellee.[1] Appellant's motion for a new trial was denied and she filed this appeal arguing solely that the court's charge to the jury was in error. We agree and order a new trial.

Where the accuracy of a charge is in issue, an appellate court must look to the charge in its entirety against the background of evidence in order to determine whether or not error was committed and whether that error was prejudicial to the complaining party. *Slavish v. Ratajczak*, 277 Pa.Super. 272, 419 A.2d 767 (1980).

The evidence indicates that around 8:00 p. m. on the 3rd of September, 1974, appellant had just left her place of employment in the Cedarbrook Mall, located in Philadelphia, Pennsylvania. The appellant was walking south toward the intersection of Cheltenham and Mt. Airy Avenues. The intersection is controlled by traffic lights, and there are two lanes of travel and left-hand turn lanes on Cheltenham leading into the Mall, which are divided by a medial strip. Appellant had traversed part of the roadway to the medial strip and was intent on crossing Cheltenham to reach a bus

---

1. As for Burton Chardak, appellee's father and owner of the vehicle involved in the accident, the trial court granted a nonsuit in his favor. See Pa.R.Civ.P. 230. The propriety of this action is not questioned on appeal.

stop. At this same time, appellee was driving her MG east on Cheltenham, in the company of two friends—James Dominic was seated in the front and William Sturchio was in the back. Because it was raining heavily, the appellee had her headlights and windshield wipers on and was moving between 15 and 25 miles per hour. Around 100 feet from the intersection, appellee observed that the light governing her lane was green.

At trial, the witnesses gave varied accounts of when they noticed the appellant. The appellee's version placed the victim approximately five feet in front of her vehicle, at a point about two feet right of the medial strip, before she came into her line of vision. On cross-examination, however, appellee revised her estimation to "three car lengths, or forty-five feet." (RR 192a) The appellee also noted that the appellant was carrying an open umbrella, which was aimed in the direction of on-coming traffic.

Next, James Dominic, who was called by the appellant, remarked that he initially observed the victim "approximately one hundred feet from the intersection," and she was "standing on the medial strip." (RR 55a 56a) The second time was "[a]bout thirty feet ... to fifty feet" from the intersection, *id.*, and she was "[s]tepping off the curb." (RR 57a) Given such statements, counsel for appellant produced a transcript of a deposition taken on August 12, 1976, in which the witness stated that he first saw the victim 35 feet, and not 100 feet, prior to impact; and that "she was walking" instead of standing on the medial strip. (RR 66a) The witness conceded the inconsistency and admitted that his recollection was better two years after the accident than at trial. (RR 69a) The witness went on to corroborate the appellee's accounting of the appellant holding an umbrella "to her side, facing ... traffic[,]" (RR 58a), although he did not remember the color of the traffic signal.

Lastly, when William Sturchio took the stand, he related that upon approaching the intersection, the light was green and that his recollection of the appellant was that she was standing to the left, and he saw her with the medial strip

behind her. "Whether she was on the medial strip or not, or in the road already, it [was] difficult to exactly say, but [he]—looking at her, related her to the medial strip. In other words, the medial strip [was] behind her." (RR 136a) Upon questioning by the trial judge, Sturchio did give the figure of forty-two feet, (RR 139a), as the distance at which he first sighted the victim. Additionally, the witness stated that the victim was in possession of an umbrella.

As a direct result of the accident, the appellant could recall no more than walking up the pedestrian walkway running along side Cheltenham Avenue, and then "waking up in the emergency room of the Chestnut Hill Hospital." (RR 78a) However, she did deny using or even owning an umbrella.

Appellant's theory of recovery was premised upon appellee's negligence, or, alternatively, if there was evidence of contributory negligence,[2] relief was warranted under the "Discovered Peril Doctrine." In accordance with appellant's position, the trial court read the following points, submitted by the appellant, to the jury:

Point Number Twenty-nine is affirmed and reads as follows:

Even if you find that the plaintiff was contributorily negligent, this contributory negligence will not bar the plaintiff's right to recover unless the contributory negligence is shown to be a proximate cause of the plaintiff's injuries.

That is true.

Point Number Thirty-one is affirmed and reads as follows:

Pennsylvania has a rule which is called the Discovered Peril Doctrine.

---

**2.** Since this cause of action arose on September 3, 1974, Pennsylvania's Comparative Negligence statute, The Act of April 28, 1978, P.L. 202, No. 53, § 10(89), effective June 27, 1978, as amended, October 5, 1980, P.L. 693, No. 142, § 222(a), effective in 60 days; 42 Pa.C.S.A. § 7102 (Pamphlet, 1981), has no bearing on the instant case. See *Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313 (1976).

Members of the Jury, I'm affirming this point for Charge, though I must say I think it's only tangentially involved in this case, but I'll read it nevertheless. This rule may be applicable in determining whether the plaintiff's contributory negligence, if any, was a proximate cause of her injuries. If it is not, contributory negligence will not bar a recovery by plaintiff. The rule may be expressed generally as follows:

Where defendant should be aware of the existence of a potential danger to the plaintiff, caused by the plaintiff's negligence, at such a time that defendant could avoid harming the plaintiff by acting carefully, and thereafter instead of avoiding injury to the plaintiff, the defendant negligently brings about the accident, the plaintiff is relieved of all liability for contributory negligence. This is because the plaintiff's contributory negligence would not be a proximate cause of the plaintiff's injuries.

The defendant's negligence, after the defendant should have been able to avoid injuring the plaintiff, is the sole cause of the plaintiff's injuries.

\* \* \* \* \* \*

Point Thirty-three is affirmed and reads as follows:

A plaintiff may recover damages for an injury caused by the defendant's negligence, not withstanding the plaintiff's own negligence in exposing himself to the risk of injury, if the injury was more immediately caused by the defendant's ommission [sic], after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to the plaintiff.

Well, that's the same principle of law recited in another fashion.

Point Number Thirty-four is affirmed and reads as follows:

A plaintiff may recover not withstanding [sic] his own negligence, if the defendant failed to exercise due care to avoid inflicting the injury after the defendant knew or

should have known that the plaintiff was in a position of peril."[3] (RR 253a–256a)

 After the instructions were completed, the jury retired for deliberations at 2:15 p. m. The trial judge, at 4:20 p. m., received a communique from the jurors and they were reconvened in open court. The jury requested, and was reread, the points for charge, a portion of which appears *supra*, concerning the question of liability.[4] (RR 275a–277a) Thereafter, at 4:37 p. m., the jury recommenced deliberations. However, at 8:20 p. m., the court received a second note which read: "If both parties are negligent, must we decide in favor of the [appellee]? Thank you. [Forewoman]."[5] The trial judge called the parties and the jurors into

**3.** This statement seems to be at odds with the following instruction read by the trial court:

"Should you find that both Margaret Smith and Sherre Lynn Chardak were negligent, and the negligence of each substantially contributed to the happening of the accident, then your verdict must be in favor of the defendant, Sherre Lynn Chardak. This is true even if you find the negligence of one was greater than the negligence of the other. Negligence on the part of Margaret Smith which substantially contributed to the happening of the accident, will prevent her from getting a verdict in her favor, even if you find her negligence was less than that of the defendant.

That is a true statement."

(RR 261a)

Given the seeming inconsistencies in the charge, it is not surprising that the jury was perplexed on the question of liability. In one portion of the charge they were told that appellant was permitted to recover despite her own negligence, and in another section they were specifically informed that negligence on the part of the appellant would preclude them from issuing a verdict in her favor.

**4.** At this juncture, the jury informed the trial judge that it had not yet reached the question of damages, inasmuch as it was still wrestling with the issue of liability. (RR 270a)

**5.** The fair import of the question propounded by the foreperson was that the jury was in doubt as to the legal effect of a finding of negligence on the part of both the appellant and the appellee. In this dilemma, notwithstanding what the court had already said to the jury, it was plainly incumbent upon the court to give full and adequate instructions to meet all phases of the situation which the question presented. The jury may have found that the appellant's conduct was negligent up to the moment she was injured and that her negligence materially and essentially contributed to the injury, together with the negligence of the appellee; or, the jury may have

court and responded: "The answer is yes. If you find both parties negligent, your verdict *must be* for the [appellee]." (Emphasis added) (RR 281a) The jury was escorted out of the courtroom,[6] and within nine (9) minutes returned with a verdict in favor of the appellee.

found that it was negligent conduct for the appellant to place herself in a position of danger, but that after doing so, the appellee could have seen that the appellant could or would not escape from the danger, and that thereafter the appellee had an opportunity by the exercise of reasonable care to save the appellant from harm and did not do so. Either situation was consistent with the question asked of the court. It was therefore incumbent upon the court to give the jury a rule for their guidance in either aspect of their possible finding. This was not done, though the request was made by counsel. The effect of the court's failure to thus refer to the doctrine of discovered peril was virtually to withdraw the matter of discovered peril from the jury's consideration. The jury might reasonably have understood from this answer that they were not to apply the doctrine and so did not give the appellant the benefit of the rule in their consideration of the established facts. See *Annes v. Connecticut Co.*, 107 Conn. 126, 131, 132, 139 A. 511, 512–13 (1927); see generally *Osterritter v. Holl*, 259 Pa.Super. 112, 393 A.2d 742 (1978).

6. At this stage of the proceedings, appellant's counsel had a side bar discussion with the trial judge and appellee's counsel, in which the following ensued:

"MR. MASTERSON [Appellant's counsel]: May I make one observation and remark?
THE COURT: Yes.
MR. MASTERSON: This has to do with this discovered peril aspect of the case which your answer may not include, that if they find both parties negligent, but if they find that the [appellee] still had an opportunity to avoid the collision, they may still find for the [appellant].
THE COURT: Well, I think that has been more than adequately explained to them. It has been read to them two different ways on two different occasions. I can't conceive that they don't understand. *I agree with you, but I don't think that this question has implicit in it that there is a misunderstanding on that point.*
MR. HIGH [Appellee's counsel]: I don't think so either, Your Honor." (Emphasis added) (RR 281a–282a)

We point this exchange out, since appellant's exception to the charge was made *after* the jury had left the courtroom. Ordinarily, exceptions to a charge must be presented *before* the jury retires to be preserved. See *In re Estate of Fickert*, 461 Pa. 653, 337 A.2d 592 (1975). Even so, "[w]hile the trial judge could properly have refused to allow any exceptions to the charge after the jury retired (See Rule 227(b) of Pa.R.Civ.P., 12 P.S. Appendix and *Dinio v. Goshorn*, 437 Pa. 224, 270 A.2d 203 (1970)), the instant record is clear, however, that the trial judge allowed the exception[] to be recorded. This was

From the court's answer the jury doubtless understood that if the appellant was held to be guilty of contributory negligence, despite a finding that appellee was equally guilty of negligence, she was barred from recovery. Under the doctrine of discovered peril, which was invoked by the appellant, such was not a correct statement of the law. Moreover, such reply was at odds with the trial court's earlier charge to the jury, where it was properly stated that under the doctrine *a pedestrian may still recover notwithstanding his own negligence*, where a motorist failed to stop his vehicle and exercise due care to avoid inflicting injury after he knew or should have known that the pedestrian was in a position of peril. (RR 256a); see *Zernell v. Miley*, 417 Pa. 17, 208 A.2d 264 (1965); *Lindner v. Friedel*, 414 Pa. 436, 200 A.2d 771 (1964); *Lehman v. McCleary*, 229 Pa.Super. 508, 329 A.2d 862 (1974).

■ The trial court, in its Opinion filed with this Court, takes the position that, "[a]ssuming *arguendo* that the response to the jury's question appeared erroneous, the charge, when considered as a whole, was proper, adequate, and consonant with the factual situation presented in the case *sub judice*." (Trial Court Opinion at 5). We do not take issue with the proposition that if, by reading the charge *in toto*, the law was fairly put before the jury, the judgment would not be reversed even though isolated portions of the charge were subject to criticism. See *Giannone v. Reale*, 333 Pa. 21, 3 A.2d 331 (1939); *Vogel v. Suburban Construction Co.*, 144 Pa.Super. 588, 591, 20 A.2d 905, 907 (1941). However, the fallacy in the trial court's argument is that we are

within the court's prerogative." *Bentivoglio v. Ralston*, 447 Pa. 24, 30, 288 A.2d 745, 749 (1972). Additionally, we find that the jury's question, when given a fair reading, should have put the trial court on notice that there was some confusion in the minds of the jury regarding the law on negligence, contributory negligence, discovered peril and the sudden emergency doctrine, which was argued by the appellee at trial. (RR 262a–263a, 279a); see generally *Commonwealth v. Mulgrew*, 475 Pa. 271, 274, 380 A.2d 349, 351 (1977); *Commonwealth v. Carter*, 274 Pa.Super. 538, 545, 418 A.2d 537, 541 (1980). Accordingly, the court's response should have included clarification on the doctrine of discovered peril. See note 5 supra.

unable to ascertain, under the circumstances, whether the jury was misled by the erroneous instruction *on such a vital matter as appellant's negligence.* Our Supreme Court, in *Pedretti v. Pittsburgh Railways Co.*, 417 Pa. 581, 209 A.2d 289 (1965) made some observations regarding erroneous instructions which are equally applicable here, *viz.*:

> " 'Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting or contradictory one which correctly states the law on the point involved, for the jury, assuming, as is their duty, that the instructions are all correct, may as readily have followed the incorrect as the correct one, and it is impossible to know which they accepted. [citing cases].' See also: *Stegmuller v. Davis*, 408 Pa. 267, 182 A.2d 745 [(1962)]; *Lieberman v. Philadelphia Transp. Co.*, 410 Pa. 179, 186, 188 A.2d 719 [(1963)]." *Id.*, 417 Pa. at 586, 209 A.2d at 292, quoting *Hisak v. Lehigh Valley Transit Co.*, 360 Pa. 1, 6, 59 A.2d 900, 903 (1948).

Accord *Logan v. Bethlehem City*, 324 Pa. 7, 13, 187 A. 389, 391 (1936) (where it is impossible to determine which instruction the jury followed,—those contained in the general charge, or in plaintiff's point, which was read in error, the only recourse is to remand the case for a new trial); see *Reiter v. Reiter*, 159 Pa.Super. 344, 350, 48 A.2d 66, 70 (1946); *Vogel v. Suburban Construction Co.*, supra, 144 Pa.Super. at 591, 20 A.2d at 907; *Silvano v. Metropolitan Life Insurance Co.*, 135 Pa.Super. 260, 263, 5 A.2d 423, 424 (1939); see also *Commonwealth v. Wooley*, 259 Pa. 249, 253, 102 A. 947, 948 (1918) ("In attempting to justify himself in failing to correct his error, on the motion for a new trial, the trial judge utterly ignored the oft-repeated rule that, where correct and erroneous instructions are given in a charge, it is not to be conjectured, especially in a capital case, which the jury followed. It is enough to know that they may have followed the erroneous ones on a point vital to the defendant."); *Wolfe v. Blue Ridge Quarries, Inc.*, 9 Pa.D. & C. 533 (1927).

Instantly, the jurors' question indicated that there was some confusion as to the course to be taken if they found both parties to be negligent. See, e.g., *Nebel v. Mauk*, 434 Pa. 315, 253 A.2d 249 (1969); *Silvester v. Kerelejza*, 158 Conn. 433, 262 A.2d 157 (1969); *Bottaro v. Schoenborn*, 157 Conn. 194, 251 A.2d 79 (1968); *Annes v. Connecticut Co.*, 107 Conn. 126, 131, 139 A. 511 (1927). As a result, since such query was susceptible of an interpretation that the fact-finders were unclear concerning the issue of contributory negligence, it was harmful error for the court to fail to restate the law on the doctrine of discovered peril. See *Silvester v. Kerelejza*, supra; *Bottaro v. Schoenborn*, supra; *Annes v. Connecticut Co.*, supra. Furthermore, the fact that the erroneous instruction was the last statement made to the jurors gave it undue emphasis.[7] *Johns v. Township of Shaler*, 240 Pa.Super. 129, 131, 368 A.2d 339, 340 (1976); see also *Calhoun v. Holland Laundry*, 220 Pa. 281, 283, 69 A. 756, 757 (1908); *Rice v. Commonwealth*, 100 Pa. 28 (1882).

Consequently, given the fact that the jury was obviously concerned with the commission of some negligence attributable to the appellant, the trial court erred in failing to keep clearly before the jury the fact that appellant's negligence was no bar to recovery, *if they concluded that the doctrine of discovered peril was present in her case.* In order to rectify the error committed, see *Reilly v. Poach*, 227 Pa.Super. 522, 323 A.2d 50 (1974), we reverse the order of the lower court and remand for a new trial.

---

**7.** For us now to decide that the jury followed the general charge and ignored the judge's answer to their question, would be a matter of pure speculation, and concerning such matter we are not permitted to conjecture. See *Smith v. Clark*, 411 Pa. 142, 190 A.2d 441 (1963); *Logan v. Bethlehem City*, supra; *Vogel v. Suburban Construction Co.*, supra.