564 A.2d 165

William A. LEAPHART and Jonnie Leaphart,
his wife, Appellants,

v.

WHITING CORPORATION, Controlled Motions, Inc., Matx,
Inc., and A.C. Kuhn and Son, Inc., Estep Electrical
Service Company, and Electro Lift, Inc.,

v.

HARVEY HUBBELL, INCORPORATED, Appellees,

William A. LEAPHART and Jonnie Leaphart, his wife,

v.

WHITING CORPORATION, Controlled Motions, Inc., Matx,
Inc., and A.C. Kuhn and Son, Inc., Estep Electrical
Service Company, and Electro Lift, Inc.,

v.

HARVEY HUBBELL, INCORPORATED and Square
D Company, Appellees

Appeal of CONTROLLED MOTIONS, INC., Appellant.

Superior Court of Pennsylvania.

Argued Jan. 31, 1989.

Filed July 27, 1989.

Reargument Denied Sept. 14, 1989.

256

Joseph Lurie, Philadelphia, for Leaphart, appellants (at 333) and appellees (at 346).

Thomas J. Williams III, Carlisle, for Harvey Hubbell, Inc., appellee.

John B. Mancke, Harrisburg, for Controlled Motions, Inc., appellant (at 346) and appellee (at 333).

Before WIEAND, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

The appellants, William and Jonnie Leaphart, appeal from the judgment entered in favor of the appellees following a jury trial. This action arose after William Leaphart received an electrical shock and then fell from the superstructure of the overhead crane which he was repairing at the foundry where he was employed. As a result of the shock and fall, the appellant now suffers from permanent paraplegia. Although we sympathize with the appellants, we are unable of discern any reversible error committed by the trial court. Accordingly, judgment is affirmed.

On appeal, the appellants allege:

I. The trial court erred in charging the jury that "even wrongful or negligent conduct by defendant is not a defense."

II. The trial court erred in granting the defendants twenty peremptory challenges and the appellants only eight jury challenges.

III. The trial court erred by refusing to allow the appellants to cross-examine an expert witness as to bias, interest and compensation.

IV. The trial court erred by allowing evidence of industry standards to be admitted against the appellants in a strict liability case.

V. The trial court erred in permitting a defendant to present a witness who had not been previously identified.

VI. The trial court erred in admitting into evidence an exhibit when the appellants had been advised through discovery that said exhibit was unavailable.

VII. The trial court erred in barring evidence of post-accident modification of the defective product by a non-party.

The record reveals the following facts: In 1975, Controlled Motions, Inc. sold two five ton overhead cranes to Frog Switch Manufacturing Company which then were installed in Frog Switch's foundry located in Carlisle, Penn-

sylvania. Whiting Corporation, a manufacturer of cranes and their component parts, sold a substantial portion of the cranes' parts to Controlled Motions which assembled the cranes. The cranes' ballast resistor was manufactured by Harvey Hubbell, Inc and installed in the cranes by Controlled Motions. The runways for the cranes were constructed by Matx, Inc., and the cranes' electrical wiring was performed by Estep Electrical Service Company, in accordance with the wiring diagrams supplied by Controlled Motions. Each crane had a disconnect switch located approximately eighteen feet off the floor, and a master disconnect switch controlling the power to both cranes simultaneously was located at floor level.

On the date of the accident, May 19, 1982, William Leaphart was employed by Frog Switch as an electrician and was directed to perform routine maintenance work on one of the cranes. To allow the operation of one crane while he serviced the other, William Leaphart climbed the crane under repair in order to throw the upper disconnect switch and de-energize the crane. As he reached out to trip the switch, he placed his hand upon the cover of ballast resistor to steady himself. This caused the cover of the resistor to touch the energized resistor wires, as a result of which William Leaphart suffered a severe electrical shock, lost his balance and fell eighteen feet to the ground. William Leaphart, due to the fall, is a permanent paraplegic, confined to a wheelchair.

William and Jonnie Leaphart brought suit against Whiting, Controlled Motions, Matx and Estep. The Leapharts initially proceeded to trial on both strict liability and negligence theories against Whiting and Controlled Motion. Harvey Hubbell was joined as an additional defendant by Controlled Motions. During the course of the trial, the appellants withdrew the negligence claims against the Whiting and Controlled Motions. At the completion of evidence, a compulsory non-suit was entered in favor of Estep and Matx on the appellants' negligence claims. The case then went to the jury solely on the strict liability claims against

Whiting and Controlled Motions and the indemnification claim of Controlled Motions against Hubbell.

In sum, the appellants maintained that the crane manufactured by Whiting was defective, that Controlled Motions assembled, sold and installed the defective crane and that Hubbell manufactured the defective ballast resistor which Controlled Motions installed in the defective crane.

Following deliberations, the jury returned a verdict in favor of Whiting, Controlled Motions and Hubbell. The appellants then filed a motion for a new trial, and Controlled Motions filed a protective motion for a new trial against Harvey Hubbell. Both motions were denied. Judgment was then entered on May 16, 1988, and this appeal followed.

First, the appellant alleges that the trial court erred when instructing the jury, as follows:

> The focus in this type of a product liability case is on the product. *Even wrongful or negligent conduct by a defendant is not a defense.* The issue is whether the use of the product by the plaintiff was foreseeable to the manufacturer or suppler [sic], whether the product was defective when it left the manufacture's [sic] or supplier's hands, and whether a defective product was a substantial factor in causing the accident and injury to the plaintiff.
>
> Trial transcript, p. 946 (emphasis added).

Following completion of the charge, the appellants objected, correctly pointing out that the charge should have read: "Even wrongful or negligent conduct by the plaintiff is not a defense." Thus, the jury would have been advised that, even if William Leaphart was contributorily negligent, he could still recover for his injuries. When alerted to the error, the trial judge refused to correct the error.[1]

---

**1.** At side bar, the following exchange took place:
Mr. Lurie: Your honor, in your charge there was a sentence or paragraph you began with focus, you should focus on the product itself, if there was wrongful or negligence used and I think Your Honor may have mis-spoke because you said defendants instead of plaintiff.
The Court: I said defendants?

To constitute reversible error, a jury instruction must not only be erroneous, but also harmful to the complaining party. *Anderson v. Hughes*, 417 Pa. 87, 90, 208 A.2d 789, 791 (1965); *Spearing v. Starcher*, 367 Pa.Super. 22, 29, 532 A.2d 36, 40 (1987); *Mickey v. Ayers*, 336 Pa.Super. 512, 514, 485 A.2d 1199, 1201 (1984). Whether harmful error has been committed must be determined by reading the jury charge in its entirety, not merely isolated excerpts quoted out-of-context. *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 575, 475 A.2d 1314, 1316 (1984); *Spearing*, 532 A.2d at 40; *Mickey*, 485 A.2d at 1199. Having reviewed the charge in its entirety, we find that reversible error was not committed by the lower court. With the sole exception of failing to instruct the jury properly that contributory negligence is not a defense to strict liability, the lower court correctly instructed the jury on strict liability. Furthermore, the defendants did not attempt to prove that William Leaphart was contributorily negligent. Finally, the lower court gave the following curative instruction in response to allegedly improper comments concerning William Leaphart's conduct made during the closing argument of Controlled Motion:

> Counsel can comment on what he feels the facts show as to what caused this accident. I will ultimately charge you that any wrong-doing or negligence that you may find Mr. Leaphart did that resulted in his accident is not a defense in this case with any of these defendants and I'll explain that to you when I charge you.

Trial court op., p. 11.

Instantly, the appellants have not sustained their burden of proving that the erroneous instruction harmed their case. Since we find that the erroneous instruction was harmless, a new trial is not warranted.

> Mr. Lurie: Yes.
> Mr. Thomas: That is not my recollection.
> Mr. Lurie: Well, if Your Honor could look at your notes and—
> The Court: Well, I know what my notes say. If I mis-spoke, I mis-spoke. Okay. Next?

■■■ Second, the appellants allege that the trial court erred in granting the defendants a total of twenty peremptory challenges when they were only allowed eight jury challenges. The law regarding peremptory challenges is controlled by Rule 221 of the Pennsylvania Rules of Criminal Procedure which reads:

Each party shall be entitled to four peremptory challenges, which shall be exercised in turn beginning with the plaintiff and following in the order in which the party was named or became a party to the action. In order to achieve a fair distribution of challenges, the court in any case may

(a) allow additional peremptory challenges and allocate them among the parties;

(b) where there is more than one plaintiff or more than one defendant or more than one additional defendant, consider any one or more of such groups as a single party.

There is little case law interpreting and applying Rule 221. However, this is not to say we are without guidance. The explanatory note for Rule 221 clearly delineates how to apply the rule. The note explains: "The trial judge can best determine what is fair in a particular case by the circumstances that appear at the time of jury selection." Thus, only when the trial court's allocation of strikes failed to result in "a fair distribution of challenges," will we find an abuse of discretion and, consequently, reversible error.

Further insight is found in *Bell v. City of Philadelphia,* 341 Pa.Super. 534, 540, 491 A.2d 1386, 1389 (1985), where we were presented with a similar allegation of error arising when two defendants received a total of six challenges while the plaintiffs were allowed a total of only four peremptory challenges. Therein, we ruled that such an allocation of challenges was not an abuse of discretion.[2]

**2.** We note that, after ruling no abuse of discretion occurred, the court stated: "Moreover, the appellants failed to argue this issue in the brief filed in the trial court in support of their motion for a new trial. The issue, therefore, has not been preserved for appellate review." *Bell,* 491 A.2d at 1389.

Guidance is also found in the Pennsylvania cases decided under the previous peremptory challenge rule, 17 P.S. § 1171. In *Lenkiewicz v. Lange,* 242 Pa.Super. 87, 93, 363 A.2d 1172, 1175–1176 (1976), we stated:

The Act of March 29, 19860, P.L. 344, § 1 (17 P.S. § 1171) [repealed], allots four peremptory challenges to the plaintiff and four challenges to the defendant. Pennsylvania appellate courts have consistently interpreted that statute as allowing four challenges to each class of litigants with an antagonistic interest. Additional defendants have interest antagonistic to each other. (citations omitted)

While we recognize that *Lenkiewicz* provides limited guidance due to the repeal of 17 P.S. § 1171 and the adoption of Rule 221, we do not believe Rule 221 was intended to abrogate completely the notion that each class of antagonistic defendants is entitled to four challenges. See Rule 221, explanatory note. Rather, the new rule allows the trial court great discretion in formulating an equitable distribution of challenges. Instantly, the trial court, applying *Lenkiewicz* and Rule 221(b), found that all five defendants had competing interest and, accordingly, awarded each four challenges. Then, in order to achieve a "fair distribution of challenges," the court, applying Rule 221(a), granted the appellants an additional four challenges, for a total of eight peremptory challenges. To be sure, the defendants' did have more challenges than the appellants. However, aside from sheer numbers, the appellants have failed to allege how they were prejudiced by the distribution of challenges. In fact, the *voir dire* was not transcribed. Consequently, we do not know the character of the jury or the number of challenges actually used. Unable to discern an unjust result presently, we find that the trial court's ruling was not an abuse of discretion.

■ Third, the appellant alleges that the trial court erred by refusing to allow them to cross-examine a defense expert witness as to bias, interest and compensation. Specifically, the trial court sustained defense objections to the following questions:

Q. Now, incidentally, sir, you get hired by parties in litigation all the time?

Q. Have you ever testified for another defendant in a case like this?

Q. Isn't it a fact that the majority of your time is spent testifying in these cases?

Q. So the majority of your time is spent rendering assistance to lawyers in case in court?

Q. So far, you have gotten $6,000.00 from Mr. Marcello, is that correct?

Q. Do you ever get a bonus if your side wins in these cases?

Q. Can you tell us how many times you have testified this year in cases like this?

Appellants' brief, p. 20.

While objections were sustained to the above-quoted questions, the appellants were allowed to ask numerous similar questions. Those questions and the answers follow:

Q. Now, the conclusions and opinions that you have reached in this matter, were they fair and impartial?

A. Yes, sir.

Q. The fact that you were hired by Mr. Marcello, that didn't in any way affect your impartiality?

A. No, sir. I do about half defense work and about half plaintiff work.... It does not affect my objectivity.

\* \* \* \* \* \*

Q. You say that you are associated with Spring Garden College. Isn't it a fact that the majority of your time is spent testifying in these cases?

A. Currently, yes, sir, it is....

\* \* \* \* \* \*

Q. Do you work more than 40 hours a week on these types of case?

A. I try not to, sir.

\* \* \* \* \* \*

Q. Can you give us an idea of how many weeks you spend your time doing this kind of work?

264

A. I'd say 48 weeks.

\* \* \* \* \* \*

Q. And your hourly charge to Mr. Marcello is what amount of money?

A. Oh, I'm sorry. The amount per hour for my services, regardless of what I'm doing, including now, is $150 an hour.

\* \* \* \* \* \*

The Court: Let me ask the question. What is your best estimate of up to now the time you spent working on this case? Your best estimate.

A. My best estimate up to today would be probably five days.

Q. Five days.

A. Assuming they were eight hour days.

Q. So that is 40 hours. Is that correct?

A. Yeah.

Trial Transcript, pp. 723–730.

A review of the questions which the appellants were permitted to ask reveals that, with the sole exception of the question on a possible victory bonus, the appellants did elicit upon cross-examination the very information which the disallowed questions were designed to elicit. Since it is well within the trial court's discretion to exclude evidence which is merely cumulative in nature, *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 455, 467 A.2d 615, 621 (1983); *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978), we find no error occurred when the questions were disallowed.

■ In regard to the question, "Do you ever get a bonus if your side wins in these cases?," the trial court correctly stated, "The question of whether he *ever* received a bonus was too broad because whether he received a bonus in any other case, was not relevant." Pennsylvania law is clear that questions of admission and exclusion of evidence, including the scope and limits of cross-examination, are within the sound discretion of the trial court. *Kemp v. Qualls*, 326 Pa.Super. 319, 323, 473 A.2d 1369, 1371 (1984); *Burch,*

467 A.2d at 621; *Lewis*, 393 A.2d at 944. Bias or interest of a witness in a dispute which may affect his or her credibility is a proper subject for impeachment. *Price v. Yellow Cab Co.*, 443 Pa. 56, 278 A.2d 161 (1971). However, the question of whether the expert witness has received bonuses in cases other than the dispute at issue simply is not relevant to an attack on the witness's credibility in the present case. Thus, the question was correctly disallowed. *See Mohn v. Hahnemann Medical College and Hospital,* 357 Pa.Super. 173, 179, 515 A.2d 920, 924 (1986).[3]

Fourth, the appellant complains that the trial court erred in admitting evidence of industry standards against the appellants in this strict liability case. It is undisputed that admission of industry standards in a strict liability case would constitute reversible error. *Lewis v. Coffing Hoist Division,* 515 Pa. 334, 344, 528 A.2d 590, 595 (1987); *Majdic v. Cincinnati Machine Company,* 370 Pa. Super. 611, 620, 537 A.2d 334, 339 (1988). However, the appellants first offered evidence of industry standards through the testimony of their expert, A. Richard Klashak, and, at the time the testimony was offered, the appellants were pursuing both negligence and strict liability claims against Whiting and Controlled Motions. Trial Transcript, pp. 75–82. Only after evidence of industry standard was proffered by the appellants and rebutted by defendant, Whiting, did the appellants withdraw the negligence counts of their complaints. Thus, we find that, in a strict liability

---

3. When questioning about the bonus occurred, the following exchange took place:

Q. Do you ever get a bonus if your side wins in these cases?
A. No, sir.
Mr. Marcello: Objection.
The Court: Sustain the—
Mr. Marcello: Your honor, if this has something to do with—
The Court: I sustained the objection. We're talking about this case.
Trial transcript, pp. 729–730.
Clearly, the court opened the door for the appellants to ask a relevant question: Whether the witness would receive a bonus from Mr. Marcello if the defendants won the present case. However, the appellants did not ask that question. Moreover, we note that the witness did, in fact, answer the question in the negative before the objection to the question was sustained.

case in which negligence is also alleged, admission of evidence of industry standards does not constitute reversible error. Moreover, even if the evidence was if fact inadmissible, the appellants, having introduced the evidence in their case in chief, cannot later deprive their opposition of the privilege of denying it. See e.g., *Ryan v. Furey*, 225 Pa.Super. 294, 297, 303 A.2d 221, 224 (1973); *Shoup v. Mannino*, 188 Pa.Super. 457, 149 A.2d 678 (1959); *Helmick v. South Union Township*, 323 Pa. 433, 185 A. 609 (1936).

 Fifth, the appellant alleges the trial court erred in permitting additional defendant, Harvey Hubbell, Inc., to call a witness, George Parr, who had not been previously identified. Following William Leaphart's accident, George Parr, a licensed private investigator, was hired by Hubbell and interviewed William C. DeWalt, an employee of Frog Switch, concerning the allegedly defective ballast resistor. Parr prepared a written report concerning his investigation.

Hubbell, having no plans to call George Parr, did not list him as a prospective witness. However, on the third day of trial, the appellants requested a copy of the report which, by order of court, was supplied to them. The following day, the appellants called DeWalt as a witness. He testified that no jumper cables were installed on the resistor when he examined it after the accident and that he could not remember whether the side of the cover was removed. Several days later, Hubbell called George Parr to impeach William DeWalt's testimony. Parr testified that the statements made during his interview of DeWalt were inconsistent with the statements made by DeWalt at trial.

In support of their argument, the appellants cite Pa.R. C.P. Rule 4019(i) and *Clark v. Hoerner*, 362 Pa.Super. 588, 525 A.2d 377 (1987). Rule 4019(i) reads:

(i) A witness whose identity has not been revealed as provided in this chapter shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

In *Clark,* we applied Rule 4019(i) and reversed the decision of the trial court to allow expert rebuttal testimony following the conclusion of all parties' case in chief. However, in *Clark,* 525 A.2d at 382, we recognized that "The rules must be interpreted to prevent surprise and unfairness and not as devices for excluding relevant, rebuttal evidence." Instantly, we have no element of surprise. The appellants had a copy of Parr's report prior to DeWalt's testimony and, consequently, knew of the testimonial conflict. In addition, it is hornbook law that the credibility of a witness may be impeached through the use of prior inconsistent statements. *Jenkins,* Pennsylvania Trial Evidence Handbook, § 17.12. The testimony of George Parr was offered for the purposes of impeachment only and did not go beyond the inconsistent trial testimony of William DeWalt. Thus, we find no error was committed when the court allowed George Parr to testify.[4]

Sixth, the appellants allege that the trial court erred in allowing a certain Harvey Hubbell, Inc.'s exhibit when they were advised through discovery that the exhibit was unavailable. This issue is wrought with confusion. The appellants objected to admission of an exhibit, the resistor box.[5] The appellants then proceeded to argue that the ballast resistor itself should not be admitted due to discovery violations. Trial Transcript, p. 831. This is the argument they continue on appeal. However, if the appellants' actual objection was to the admission of a ballast resistor similar in design to the allegedly defective one, then

**4.** Moreover, we note that the appellants' objection to allowing George Parr to testify was made on the basis that Parr's testimony would be hearsay, not on the grounds of undue surprise. Consequently, the appellant cannot now claim he was surprised by the testimony and invoke the protection of Rule 4019(i). Appellants should have objected on the basis of surprise and moved for a continuance since the inconsistent testimony of their witness was the "extenuating circumstance" beyond the control of the defendant. See generally, *Steffy v. Carson,* 422 Pa. 548, 551, 222 A.2d 894, 896 (1966).

**5.** The appellants, in their case in chief, introduced a part of the resistor cover as plaintiff's exhibit 28. Trial Transcript, p. 340. They cannot therefore complain of Hubbell's expert's use of a similar resistor cover to illustrate his testimony.

their objection is waived. When the resistor was actually admitted into evidence, the appellants specifically stated, "No objection." Trial Transcript, p. 903. See *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

In either event, by the appellants' own admission, Hubbell did, in fact, inform them via a pre-trial memorandum that Hubbell "might possibly use a resistor of the type allegedly involved in this accident as an aid in demonstrating the testimony of [Hubbell's expert]." Thus, Hubbell complied with discovery rules. See Pa.R.C.P., Rule 4003.1 and 4019. The appellants never requested an opportunity to view the resistor or its cover and did not request a continuance to allow their experts an opportunity to view the exhibit. Accordingly, their allegation of error is meritless.

 Finally, the appellants allege that the trial court erred in barring evidence of post-accident modification of the crane made by a non-party, Frog Switch, the appellant's employer at the time of the accident. In Pennsylvania, the subsequent repair rule, forbidding admission of evidence of subsequent repair in a negligence action, is inapplicable in a strict liability case. *Matsko v. Harley Davidson Motor Co., Inc.,* 325 Pa.Super. 452, 454–462, 473 A.2d 155, 156–159 (1984); *Wilkes–Barre Iron v. Pargas of Wilkes–Barre,* 348 Pa.Super. 285, 293 n. 2, 502 A.2d 210, 214 n. 2 (1985); *Gottfried v. The American Can Co.,* 339 Pa.Super. 403, 403, 489 A.2d 222, 222 (1985).

 However, this case is clearly distinguishable on its facts from *Matsko.* In *Matsko,* the party against whom the evidence of subsequent remedial repair was offered was not only the party who made the repairs but also was the defendant-manufacturer. Instantly, the alterations were performed by the employer of the injured party. We must remember, as did the trial court, that "The decision [in *Matsko* ] did not alter the general rule that post accident conduct must nevertheless be shown to be relevant in order to be admissible." *Gottfried,* 489 A.2d at 226. The fact that a third party alters a product after an accident is not necessarily probative or relevant to the issue of whether the

product was in fact defective. The third party repairer may make repairs or improvements for reasons completely independent of the product's safety. For example, repairs may be made because of pressure from a union, or simply because of a desire to conduct business more efficiently. Those types of changes say nothing about the allegedly defective nature of a product. Thus, the court was correct in finding that the evidence was irrelevant.[6]

Instantly, the appellants did not offer evidence of post-accident design change by the defendant-manufacturers; evidence of that type certainly would have been admissible. Rather, the appellants sought to admit evidence of remedial change by the employer of the injured appellant (we note, to a great extent, they were successful). Admission of evidence of remedial changes by the employer would have amounted to admission of opinion on a matter exclusively within the realm of experts. Since this would be an opinion of an "expert" whose qualifications were unknown and who would have been impossible to cross-examine, the court was correct in excluding the evidence. See generally *Dambacher v. Mallis*, 336 Pa.Super. 22, 35–39, 485 A.2d 408, 415–416 (1984).

In conclusion, we find that appellants' assertions of error are without merit. Accordingly, the court correctly denied appellants' motion for a new trial. Judgment affirmed.

Judgment affirmed at 333 Harrisburg 1988, appeal dismissed at 346 Harrisburg 1988.

HESTER, J., files a dissenting opinion.

HESTER, Judge, dissenting:

The majority concludes that appellants failed to demonstrate that the trial court's erroneous charge concerning the applicability of the defense of comparative negligence prejudiced their case. In support of this decision the court relies

---

**6.** Moreover, as has already been stated, the appellant initially brought both strict liability and negligence claims against Whiting and Controlled Motions. Thus, *Matsko* may not even apply since it did not invalidate the traditional rule that, in negligence cases, post-injury repairs or improvements are inadmissible to show a lack of due care at the time of the injury. *Gottfried*, 489 A.2d at 226.

upon an instruction given during the course of closing arguments that correctly set forth the law on the subject. Since I would find that the conflict between the two instructions regarding this vital matter established the requisite prejudice, I dissent.

It is clear that in this commonwealth, the defense of comparative negligence is not available in strict liability actions. *Staymates v. ITT Holub Industries*, 364 Pa.Super. 37, 527 A.2d 140 (1987). Thus, during the course of closing arguments, when counsel for Controlled Motion, Inc. allegedly brought this issue before the jury by referring to Mr. Leaphart's conduct, appellants objected. *See* Trial court opinion, at 11. In response to that objection the court correctly instructed the jury:

> Counsel can comment on what he feels the facts show as to what caused this accident. I will ultimately charge you that any wrong-doing or negligence that you may find Mr. Leaphart did that resulted in his accident is not a defense in this case with any of these defendants and I'll explain that to you when I charge you.

*Id.* Later, during the course of the charge, the trial court erroneously stated that "even wrongful or negligent conduct by a *defendant* is not a defense." Notes of Testimony ("N.T."), 10/1/87, at 946 (emphasis added). When apprised of this glaring mistake, the court refused to correct it.

In *Smith v. Chardak*, 291 Pa.Super. 173, 435 A.2d 624 (1981), this court considered an analogous situation. In that case, the trial court initially gave a proper charge concerning the issue contributory negligence. Later, however, in the course of answering a question propounded by the jury, it gave an erroneous instruction on the matter. Holding that this isolated error required reversal, we stated:

> [W]e are unable to ascertain, under the circumstances, whether the jury was misled by the erroneous instruction *on such a vital matter as appellant's negligence.* Our Supreme Court in *Pedretti v. Pittsburgh Railways Co.*, 417 Pa. 581, 209 A.2d 289 (1965) made some observations regarding erroneous instructions which are equally applicable here, *viz.*:

" 'Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting or contradictory one which correctly states the law on the point involved, for the jury, assuming, as is their duty, that the instructions are all correct, may as readily have followed the incorrect as the correct one and it is impossible to know which they accepted. [citing cases]. See also: *Stegmuller v. Davis,* 408 Pa. 267, 182 A.2d 745 [ (1962) ]; *Lieberman v. Philadelphia Transp. Co.,* 410 Pa. 179, 186, 188 A.2d 719 [ (1963) ]." *Id.* [417 Pa.] at 586, 209 A.2d at 292, quoting *Hisak v. Lehigh Valley Transit Co.,* 360 Pa. 1, 6, 59 A.2d 900, 903 (1948).

*Smith v. Chardak, supra,* 291 Pa.Super. at 181–82, 435 A.2d at 629 (emphasis in original).

In the present case, the trial court's charge contains a palpable misstatement of the law. The court refused to correct that misstatement. This error is not cured by the court's previous instruction on the matter since it is impossible to ascertain which instruction the jury actually followed.

As the above discussion clearly demonstrates, the principles enumerated in *Smith* are dispositive of this issue. Consequently, I would reverse and remand for a new trial.